STATE v. THOMPSON.

1. EVIDENCE.—If evidence in reply in contradiction be objected to as not a threat its admission cannot afterwards be questioned on ground that it was not a contradiction, and if not a threat it was not prejudicial to appellant, but here it was substantially a contradiction.

2. MALICE.—When charge is construed as whole it will be seen that the Judge did not simply charge that malice is implied where there is no provocation, but from a wanton and wilful act done without legal provocation.

3. CHARGE—REQUEST.—If a charge state a general proposition correctly, it is incumbent on appellant to present a request embodying a specific proposition thereunder.

4. SELF-DEFENSE.—Instruction as to self-defense too favorable to defendant because it made the test of necessity the belief of the jury.

5. CHARGE.—Where the only inference to be drawn from the evidence is that appellant was not in danger of losing his life or suffering bodily harm when he fired the fatal shot, it is not a charge on the facts to instruct jury, "you are not in danger of sustaining serious bodily harm or losing your life from a man running away," and where only inference is that a particular shot struck deceased, it is not such charge to instruct jury, "why did he shoot the shot that killed the woman?"

6. EXCEPTIONS specifying no particular error will not be considered.

Before GARY, J., Aiken, June, 1906.    Affirmed.

Indictment against Isaac Thompson and Willie Thompson for murder of Lizzie Mays. Defendant Isaac Thompson appeals.

*Mr. J. B. Salley,* for appellant, cites: *Evidence not amounting to a threat or ill feeling should not be allowed as a contradiction:* 43 S. C., 210; 49 S. C., 416; 27 S. C., 186. *Statement by accused relevant to issues should be proved in chief and not in reply:* 15 S. C., 391; 43 S. C., 107. *All facts and circumstances being in evidence malice must be proved as other facts:* 15 S. C., 157; 66 S. C., 476; 68 S. C., 313. *Belief of jury is not the test of necessity in self-defense:* 66 S. C., 472; 452; 29 S. C., 236, 44; Hughes on Ins. to Juries, 242, 243; 23 S. C., 105. *Issue not warranted by pleadings and evidence should not be submitted to jury:* 11 Ency. P. & P., 159; 66 S. C., 250; 67 S. C., 147. *Vile epithets heaped on defendant and his brother in connection with the blows on the brother were sufficient provocation to reduce killing to manslaughter:* 34 S. C., 129; 50 S. C., 423; 21 Ency., 179. *Failure to present request to charge in capital case should not be enforced:* 16 S. C., 463; 44 S. C., 324; 68 S. C., 428.

*Solicitor Jas. E. Davis* and *Messrs. Sawyer & Owens,* contra.

February 13, 1907.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    Isaac and Willie Thompson, brothers, were indicted for the murder of Lizzie Mays, on the 7th of April, 1906. Upon their trial Isaac Thompson alone was convicted, and was sentenced to be hanged.

The statement of facts preceding the argument of the appellant's attorney is as follows:

"From the testimony it appears that there was a frolic on the night of the killing, on Mr. B. D. Lamar's place, at which some person was shot, and some time after the frolic was over the appellant, Isaac Thompson, hearing a great deal of loud cursing at the house of Delia Davis, not far from where the frolic was held, went to the scene of the cursing, and found the deceased, John Dooley, standing over his brother, Willie Thompson, with a stick in his hand. Inquiring what was the matter, the said Dooley replied with a vile epithet. The appellant, Isaac Thompson, then called to one side the witnesses, Harry Romeo, Willie Romeo, John Smith and Tom McCoy, and just as they were walking off, according to their testimony, the appellant said: "look out," and began shooting. All of the witnesses state that the deceased, Dooley, had a stick in his hand. The appellant also states that he had a knife in his hand and was coming at him with the knife and the stick in his hands, when he fired at the deceased, and at the same time he was backing away from him. The witnesses state that when the second shot was fired, the deceased, Dooley, turned to go in the door, when a third shot was fired, which struck the deceased, Lizzie Mays, who came out of the house to the door, and was instantly killed. There was no contention that appellant intentionally killed the deceased, Lizzie Mays, or that he shot her at all. The defendants had no witnesses in their behalf except themselves, and all of the State's witnesses show that the deceased, Dooley, had a stick in his hand when appellant came up, and that he had either struck appellant's brother with it, or struck over his head with it, and that the deceased, Dooley, had cursed the appellant and his brother with the vilest and most opprobrious epithets. The defendant plead not guilty, and never admitted on his examination that he killed deceased, Lizzie Mays, but was found guilty of murder, and sentenced as aforesaid.".

John Smith, a witness for the State, thus testified as to the origin of the difficulty: "Q. Where do you live? A. Beech Island. Q. Seventh April, were you present when this kill-

Rep.]                        November Term, 1906.

ing took place? A. I was there at the beginning of the fuss. Q. Did you see who killed Lizzie Mays? A. No, I was there. at the beginning of the fuss and the end I don't know anything of. John Dooley had Lizzie Mays by the left hand, with this hand, playing with her, acting like it, both laughing. He reached in a little wood pile by the side of the house, got a stick about this size (showing) and made signs like he was going to hit her, but was playing. All of a sudden in striking around, Willie Thompson was standing by the side of the house, and he made a lick above William's head about that far (showing). Then he went off a little bit. Willie said, 'hold on, what you mean by hitting me.' Dooley said, 'I hit you?' He said, 'Yes, what you mean by hitting me? I didn't do anything to you.' He said, 'Well, I beg your pardon.' Willie said, 'Alright, if you didn't mean it.' He said, 'Well, you didn't like it?' He said, 'No, I don't like it.' He said, 'Well, if you mad *about it, I don't* give a ——— about it, you ———, I will knock your brains out.' That time Ike Thompson walked up and said, 'What is the matter?' Dooley said, 'More the matter than any ——— can scatter.' Ike stepped off about that piece, to the corner of the house; I don't know the distance exactly. I called Harry Romeo; said, 'Step here, Harry.' I was sitting on the steps and I stepped out in the yard. He said, 'Step here, Willie; come here, John.' That time he said, 'Dooley, you ———; I been laying for you a long time,' and with that then he fired, and Dooley took right at Ike with the same stick he had and Ike ran backward, and I ran to keep from getting hurt."

The first assignment of error is as follows:

"I. In not striking out upon motion of defendant's counsel the following testimony of the witness, Jim Griffin, put in by the State in reply to contradict the defendant, Willie Thompson: 'I heard Will say they call us desperado, but some nigger will have to die to-night.' I said, 'Will, you boys ought to be ashamed of yourself, to be talking that way, for the simple fact that the white folks

have the law in their hands, and we have to beg them to live here, and Ike said that is right.'

"(a) Because said testimony was not a contradiction of what the defendant, Willie Thompson, denied when the foundation was being laid for a contradiction, and his Honor erred in holding that it was a contradiction of said testimony.

"(b) Because, if it can be held a contradiction it was on an immaterial fact, there being no specified threat by the defendant witness against either of the deceaseds, or that defendant was going to kill any one whatever, but simply a general statement that did not amount to a threat, and irrelevant and immaterial to the issue.

"(c) Because if the said testimony was competent and relevant so far as it was a contradiction of what the defendant, Willie Thompson, said, it was not competent to allow the witness to go further and add: 'I said, Will, you boys ought to be ashamed of yourself to be talking that way, from the simple fact that the white folks have the law in their hands, and we have to beg them to live here. And Ike said, that is right,' for the reason the State having closed its case, it could not prove what Ike Thompson had said or denied saying without laying the foundation for a contradiction, and the said testimony not being in reply to any matter brought out by the defense, was clearly incompetent, especially so since no verdict was asked for against the defendant, Willie Thompson, he being tried as an accomplice, and had a tendency to prejudice the defendant, Ike Thompson, in the eyes of the jury, and was also the mere expression of the opinion of the witness."

When Willie Thompson was on the stand, the following question was propounded on cross-examination: "Did you say in the presence of Jim Griffin at that store that night you went to Delia Davis' house, 'We are going to kill a nigger to-night,' or words to that effect? Answer. 'No, sir.' "

Jim Griffin in reply testified as follows: "Q. On that occasion did you hear Will Thompson say this: 'We will kill a nigger to-night,' or words to that effect, something to that

effect? A. I heard Will say, 'They call us desperado, but some nigger will have to die to-night.' I said, 'Will, you boys ought to be ashamed of yourself to be talking that way, for the simple fact that the white folks have the law in their own hands and we have to beg them to live here;' and Ike said, 'that is right.' Mr. Salley: I move that that be stricken out, that is no threat. The Court: That is a contradiction. He asked the defendant, when he was on the stand, that question."

The only objection to the testimony interposed by the appellant's attorney was, on the ground that it was a threat, and this is the only objection that can be considered. The question propounded to Jim Griffin was the same as that asked Willie Thompson, and the answer was substantially a contradiction of Willie Thompson.

If, moreover, the testimony did not amount to a threat then it was immaterial, and, therefore, not prejudicial to the appellant.

The second exception assigns error as follows: "II. In charging the jury on the subject of malice as follows: 'For instance, where one man kills another without any provocation at all, the law is that is murder. Malice is implied where there was no provocation, no necessity to kill him * * * it is implied from a wanton and wilful act having been done without legal provocation.'

"(a) Because the said charge took away from the jury a consideration of the question of whether the killing was intentional or not, and the jury may have inferred that as there was no provocation whatever, for the defendant to shoot Lizzie Mays, that he was, therefore, guilty of murder.

"(b) Because it was error to charge the jury that 'malice is implied where there was no necessity to kill,' for the reason that a man may kill another when there was no necessity for it and be guilty of manslaughter, and to so charge the jury prevented them altogether from finding the defendant guilty of manslaughter, if they found it was not necessary for the defendant to kill the deceased to save himself. By

so doing, he instructed them that malice, the absolutely necessary ingredient of murder, could be supplied by mere implication, from the fact that the killing was not necessary.

"(c) Because all the facts and circumstances of the killing having been brought out at the trial, it was error to charge the jury that malice could be implied, where there was no necessity or provocation to kill, and from a wanton and wilful act having been done without legal provocation, it being submitted that when all the facts of the killing are before the jury, the burden is on the State throughout to prove malice, like every other ingredient of murder, beyond a reasonable doubt."

After stating that the Solicitor did not insist upon a verdict against Willie Thompson, his Honor, the presiding Judge, said: "The defense of the other defendant is self-defense. He is charged with murder, which is the unlawful killing of any person with malice aforethought, either expressed or implied. Do not understand from that that there are two kinds of malice. There is only one kind, but it may be either expressed or implied. It may be ascertained in one of two ways. It may be expressed by word of mouth, or it may be implied from the facts and circumstances under which the act is done. For instance, where one man kills another without any provocation at all, the law says that is murder. Malice is implied where there is no provocation, no necessity to kill him. As where one makes preparation, lies in wait, and shoots another as the result of premeditation and deliberation, the law says, that is expressed malice. He has expressed it by making preparation, by deliberating, and it is implied from a wanton and wilful act, having been done without legal provocation."

When the charge is considered in its entirety, it will be seen that the presiding Judge did not simply charge that malice is implied when there is no provocation, but from a wanton and wilful act done without legal provocation. As the charge stated correctly the general principle, it was incumbent on the defendant to pre-

sent a request, embodying the proposition of law set forth in subdivision "c," if he desired that it should be submitted to the jury. *State* v. *Adams,* 68 S. C., 421, 47 S. E., 676.

The third assignment of error is as follows: "In charging the jury as follows: 'Then you will ask yourselves this question: How many shots were fired? And at the time the fatal shot was fired upon this woman, was the defendant at the bar here defending himself, against such an impending danger as was necessary *that you believe it was necessary* for him to fire that particular shot, to save his own life or himself from serious bodily harm, and that he was without fault in bringing about that situation of affairs.'

"(a) Because in so charging, his Honor took away from the jury altogether a consideration of the first two shots, and by so doing prevented them altogether from considering whether or not the killing was a case of manslaughter instead of murder.

"(b) Because his Honor erred in so charging the jury, because in so doing he made *the belief of the jury* the test of whether or not it was necessary for the defendant to fire the particular shot that killed the woman. Whereas, it is submitted that the true test is whether or not *the accused believed that it was necessary* for him to fire the fatal shot to save his own life or himself from serious bodily harm, and for the jury to say whether or not from all the facts and circumstances under which it was fired, the accused, as a reasonable and prudent man, was warranted in forming such belief."

The presiding Judge also charged the jury as follows:

"Of course, you understand the law recognizes self-defense. Properly so. A man has a right to defend himself when he is attacked, when he is not in the wrong himself. If a man attacks you without your being in the wrong, without your being at fault, it is properly recognized. But it won't do for a man just to say, I did it in self-defense. He must go farther and show he did it under such

circumstances, as would warrant the jury in believing that he believed his own life was in danger and that the danger was so imminent and pressing upon him, that he had no other probable means of escape, and it was necessary for him to shoot to save his life or save himself from serious bodily harm."

The appellant's attorney admits that the law of self-defense is correctly stated in the charge just quoted. Not only did the presiding Judge charge fully as to self-defense, but also as to manslaughter. Therefore, subdivision "a" cannot be sustained. Nor can subdivision "b" be sustained, for the reason that the charge was too favorable to the appellant, in that it eliminated from the consideration of the jury the element of self-defense, which requires that the *accused* should actually believe that he was in such immediate danger of losing his life, or sustaining serious bodily harm, that it was necessary for his own protection to take the life of his assailant.

Under the charge set out in the exception, it was only incumbent on the accused, to create a belief in the minds of the *jury* that it was necessary for him to fire the fatal shot to save his own life, or himself from serious bodily harm; whereas, in order to make out a case of self-defense, the evidence should not only satisfy the jury, that the accused believed he was in imminent danger, but that the circumstances in which he was placed would, in the opinion of the jury, justify such a belief in the mind of a person, possessed of ordinary firmness and reason. *State* v. *McGreer,* 13 S. C., 464.

The error assigned by the fourth exception is as follows: "IV. In charging the jury: 'Self-defense is based on necessity. It would not be necessary to shoot a man running from you. You are not in danger of sustaining serious harm or losing your life, from a man running away; therefore, if you shoot at a man running from you, miss him, and kill somebody else, you cannot plead self-defense under those circumstances.'

"(a) Because in so charging, his Honor, the presiding Judge, invaded the province of the jury, and intimated his opinion on the facts, and it is respectfully submitted that it should have been left to the jury to say, from all the connected facts and circumstances of the killing, whether or not it was necessary for the accused to fire at the deceased while running from him."

After charging as set forth in the exception, the presiding Judge continued as follows: "So, then, you will settle the question of fact: under what circumstances was the shot fired that killed the woman. Was it fired from necessity to save his own life or not? And was the danger so pressing upon him that he had no other probable means of avoiding him, but shooting. If he was reduced to those circumstances and shot, of course, it would make no difference if he missed the man he shot at, and killed somebody else, if he was in the right in shooting at that man. But if he was wrong, if it was not necessary for him to shoot to save his life, and he shoots and misses that man, and kills somebody else, then self-defense would not avail him. Why did he shoot the shot that killed the woman? Why did he shoot that shot? Was he in danger of losing his life? Was it necessary for him to fire that shot to save his life or save himself from serious bodily harm? If so, he had a right to shoot; if not, he had no right to shoot; it makes no difference whether he saw the woman or not, if he was doing an unlawful act, shooting at another party."

The only inference that can reasonably be drawn from the evidence, in this case, is that the accused was not in danger of losing his life or suffering serious bodily harm, at the time the fatal shot was fired. Furthermore, the necessity for firing said shot was squarely submitted to the jury.

The fifth assignment of error is as follows: "V. While charging the jury in dwelling on the shot that killed the woman as follows: 'Why did he shoot the shot that killed the woman? Why did he shoot that shot? Was he in danger of losing his life? Was it necessary for him to fire

that shot to save his life or himself from seriously bodily harm? If so, he had a right to shoot; if not, he had no right to shoot.'

"(a) Because in so doing, he charged on the facts, by stating to the jury that the deceased fired the shot that killed the woman, which was the vital issue of the case, raised by the defendant's plea of not guilty. And further, because in so charging the jury he took away from them altogether a consideration of the first two shots, when the jury should have been allowed to consider the shots and each and every factor in the case, and to consider whether or not it was necessary for accused to fire, not only the third, but all the shots, and by so doing prevented them from bringing in a verdict of manslaughter, as it is submitted the jury could have rendered a verdict of manslaughter, even though they found it was not necessary to fire the last shot."

It is true, the accused did not admit, in so many words, that the third shot killed Lizzie Mays, but no other inference can be drawn from the testimony, and subdivision "a," of the third exception, is predicated upon this fact.

The sixth assignment of error is as follows: "VI. In charging the jury: 'If you find he was not being pursued by Dooley when the third shot was fired, but Dooley was fleeing from him, then he could not plead self-defense.'

"(a) By so charging, his Honor entrenched on the province of the jury, by intimating to them his opinion on the facts that the third shot killed the woman.

"(b) Because in so charging the jury he invaded the province of the jury by expressing his opinion, that if Dooley was fleeing, accused could not plead self-defense; whereas, it should have been left to the jury to say, whether or not, from all the facts, accused believed it was necessary to fire the fatal shot, to save his life or himself from serious bodily harm, and whether or not he was warranted as a reasonable being in forming such a belief."

This is disposed of by what was said in considering the fourth exception.

The error assigned by the seventh exception is as follows: "VII. In reading to the jury the case of *The State* v. *Smith,* 2 Strob., 77, and remarking to the jury that said case reads like fiction, because the said case is an extreme case, and not applicable in this case and not relevant to issues in this case, and the said reading and remarks were prejudicial to the rights of the defendant."

This exception fails to specify in what particulars the ruling was prejudicial to the appellant.

The eighth assignment of error was as follows: "VIII. In charging the jury that: 'If a man kills another because he says he insults him, calls him opprobrious epithets, that would not be manslaughter; that is murder. And in further charging the jury that in order to constitute legal provocation, there must be some violence to the person, as pulling his nose, stepping on his corns, or jostling him off the streets, when, it is respectfully submitted, that any violence to the near relative of the accused, or previous wrong done to the accused, or any of his near relatives, whether attended with any personal violence towards the accused or not, when taken into connection with the vile epithets and abuse, heaped upon the accused and his brother, might have been sufficient legal provocation to reduce the killing from murder to manslaughter, and it was error for his Honor not to so affirmatively charge the jury."

It cannot be successfully contended that the charge set out in this exception was erroneous as a general proposition. Therefore, it was incumbent upon the appellant to present requests embodying the additional principle for which he contends in this exception.

The ninth and tenth exceptions are withdrawn.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, and the case remanded to that Court for the purpose of having a new day assigned for the execution.