## THOMPSON *v.* THE STATE.

ATKINSON, J. 1. It was not erroneous in this case to permit a witness to testify that the deceased "usually carried a goodly sum of money on his person," over the objection that there was "no allegation in" the bill of indictment "to that effect," and that the testimony was immaterial and irrelevant.

2. Considered in connection with testimony of other witnesses introduced after examination of a witness who gave testimony that was objected to,

it was not erroneous to permit the witness to testify that at a certain time and place he saw the two codefendants, but did not see the defendant who was on trial, over the objection that such testimony failed to connect the defendant with the offense, and was immaterial.

3. Testimony that a person's foot "fit it [a track] like he might have been the one that made it," considered in connection with other testimony of the witness that he saw the person "place his foot in the track," that "the shoe filled the track," was not objectionable on the ground that it was a mere conclusion of the witness.

4. Immediately following the testimony last referred to, the witness testified that when the person "put his foot in the track, it seems there was a change in his countenance; his voice was kinder shattering after that." *Held:* (*a*) This testimony was not objectionable on the ground that it was a mere conclusion of the witness. *Roberts* v. *State*, 123 *Ga.* 146 (6) (51 S. E. 374), and cit. (*b*) When considered in connection with other testimony tending to show that the defendant and other persons referred to by the witness were conspirators in commission of the crime, the above quoted testimony was not objectionable on the ground that it was irrelevant and immaterial.

5. The remarks of the solicitor-general 'in the presence of the jury, as to what had been proved and was expected to be proved to show the relevancy of the testimony last quoted, considered in connection with instructions by the court given at the time, were not sufficient to require the grant of a mistrial. *Macon &c. Ry. Co.* v. *Parker*, 127 *Ga.* 471 (6) (56 S. E. 616), and cit.

6. "Where the court, over objection, admits evidence, with the statement that he will rule it out unless connected in point of time, and it is not thus connected, although such evidence may be inadmissible, it is not incumbent upon the court, of its own motion, to exclude it." *Sasser* v. *State*, 129 *Ga.* 541 (3) (59 S. E. 255); *Cawthon* v. *State*, 119 *Ga.* 395 (7) (46 S. E. 897); *Bacon* v. *Bacon*, 161 *Ga.* 978 (133 S. E. 512), and cit. Under application of this ruling, the sixth ground of the motion for a new trial is without merit.

7. On cross-examination a witness for the State was asked the question: "You were employed as a special investigator in this case?" to which the witness replied: "No sir. I don't need employment in a case of this kind. I volunteered my services." Objection was interposed to the answer, on the ground that it was not responsive to the question. The court stated: "1 think it was responsive." Whereupon the attorney for the defendant said: "We move the court to declare a mistrial," and the judge said: "I overrule the motion." The ground of the motion for a new trial complaining of the matter above stated does not show cause for a reversal.

8. At the conclusion of the examination of a witness for the State the solicitor-general stated: "We would like for the jury to see the car. It is only a short distance from the court-house." The court inquired if there was any objection. The defendant's attorney then moved to declare a mistrial on the ground that these remarks in the presence of the jury were improper and prejudicial. The court overruled the motion for a mistrial, and stated to the jury that: "Whether counsel consents or

**33**

does not consent that the jury go over only a short distance from the court-house and inspect the car, that should not be considered by them as in any way affecting the case," and then said to the defendant's attorney: "You do not consent?" The solicitor-general then said: "I withdraw even the offer of it, and I withdraw any remarks in reference to it in any way," and the court replied: "All right. Gentlemen of the jury, you will not consider the remarks of the solicitor-general in reference to the inspection of the car." In the circumstances of this case the refusal to grant a mistrial is not cause for a reversal. The case differs from *Sullivan* v. *Padrosa*, 122 *Ga.* 338 (50 S. E. 142), where the alleged misconduct consisted of a proposition by the attorney of one of the parties to the attorney of the other party, made in the presence of the jury "to submit the case without argument," and similar cases relating to the making of propositions where the defendant has an absolute right to decline.

9. A witness for the State, Mrs. Osborn, testified: "I finally called Mr. Osborn after this man insisted on me calling him. I called Mr. Osborn and told him that some fellow was out there, and that he had said he was from Dalton, Ga., and had run out of gas and would be mighty glad if he would get up and get the gas for him." This was objected to as hearsay. The court announced that the witness would be examined further to ascertain if the evidence was a part of the res gestæ; and in that connection the witness on further examination testified: "My husband says to me, of course I guess he heard me and the man talking, I don't suppose he was asleep, I think he was asleep when the man first called; he says, 'That's the same white man and negro that was here the other night,' which was on Wednesday night, because we had been to preaching the night before. My husband got up and went to the window and talked to the man out of the window, and I don't remember just the words that they spoke, but anyway he come back and started putting on his clothes, and when he did that I turned the light on in our room, and when he was putting on his clothes he called for his gun." *Held:*

(*a*) The court did not err in admitting this evidence as part of the res gestæ, over the objection that it was hearsay. *Thomas* v. *State,* 67 *Ga.* 460 (3); *Robinson* v. *State,* 118 *Ga.* 198 (2) (44 S. E. 985); *Price* v. *State,* 137 *Ga.* 71 (72 S. E. 908).

(*b*) The ground of the motion for new trial which complains of the admission of the declaration in evidence fails to state that the declaration was objected to, at the time it was offered or introduced, on the ground that it was an opinion of the declarant. Consequently that ground of objection was insufficient to raise any question for decision on that point.

(*c*) The case differs on its facts, as pointed out above, from *Travelers Insurance Co.* v. *Sheppard,* 85 *Ga.* 751 (7) (12 S. E. 18), and the ruling there made is not controlling in this case.

10. The court instructed the jury: "If you find from the evidence that some other person killed Coleman Osborn, as charged in the indictment, and that this defendant was present at the time aiding and abetting such other person in the commission of his unlawful act, and participating in his criminal intent, the defendant would be guilty." *Held:*

(*a*) Giving due weight to the language "as charged in the indictment," as employed in the foregoing excerpt, the words "other person" are to be construed as referring to either one of the codefendants, Jim Hugh Moss and Eula Elrod Thompson, who were jointly indicted with Cliff Thompson the defendant on trial.

(*b*) Construing the charge as indicated above, the portion excepted to is not misleading or erroneous on the ground that it is not applicable to the pleadings and evidence.

11. The court charged: "I give you in charge section 1024 of the Penal Code of this State. Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible in evidence as part of the res gestæ. Look to all of the evidence in the case and see whether or not the alleged declarations allowed to go before you, alleged to have been made by Coleman Osborn immediately before he went to his store on the night of his death, formed a part of the transaction of his death, or were so nearly connected with the transaction of his death as to be free from suspicion of device or afterthought. If you so find that such alleged declarations or statements formed a part of the main transaction of his death, or were so nearly connected with such transaction as to be free from all suspicion of device or afterthought, you will consider these alleged statements or declarations in arriving at your verdict. If you find such alleged statements or declarations were not a part of the transaction of his death, and not so nearly connected with the transaction of his death as to be free from all suspicion of device or afterthought, you would not consider them, but should discard such alleged statement or declaration in arriving at your verdict." The court having properly admitted in evidence, as part of the res gestæ, the testimony of the wife of the deceased, as referred to in the ninth headnote, the charge was not erroneous as against the defendant for any of the following reasons assigned: (a) Whether the statements were part of the res gestæ is a question of law to be determined by the court, and after such statements had been admitted in evidence it was error for the court to leave to the jury the question as to whether they were admissible; (b) there was no evidence to authorize the charge; (c) the law of res gestæ was not applicable to the evidence in the case; (d) the court ignored the fact that Osborn's statement to his wife was simply an expression of opinion.

12. The Penal Code (1910), § 1010, declares: "To warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." The court did not read this section of the code to the jury, but, after defining circumstantial evidence, instructed the jury as follows: "In so far as the State relies for conviction in this case upon circumstantial evidence, it should be sufficient to exclude, not every possible theory, but every reasonable theory save that of the guilt of the accused. It should be consistent with his guilt and inconsistent with his innocence." *Held:*

(*a*) The language of the charge excepted to was not identical with the language of the code section, but it substantially stated the provisions of that law.

(*b*) The use of the expression, "In so far as the State relies for conviction in this case upon circumstantial evidence," did not amount to "an intimation by the court that there was other evidence upon which the jury might convict the defendant."

(*c*) The expression "not every possible theory" did not render the charge objectionable on the ground that it was vague· and confusing and obscured the real law of the case.

13. Alleged newly discovered evidence which is cumulative and impeaching is ordinarily not ground for a new trial. When a motion for new trial is made on the ground of newly discovered evidence, "it must appear by affidavit of the movant and each of his counsel that they did not know of the existence of such evidence before the trial, and that the same could not have been discovered by the exercise of ordinary diligence. If the newly discovered evidence is that of witnesses, affidavits as to their residence, associates, means of knowledge, character, and credibility, must be adduced." Civil Code (1910) § 6086. The ground of the motion for new trial based on alleged newly discovered evidence did not show a compliance with the above section of the code.

14. The fourteenth ground of the motion for new trial was not approved by the court.

15. The evidence was sufficient to support the verdict, and there was no error in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*

No. 6357. June 13, 1928. Rehearing denied July 11, 1928.

Murder. Before Judge Pittman. Murray superior court. October 31, 1927.

*Tom J. Taylor, Stafford R. Brooke,* and *William E. & Gordon Mann,* for plaintiff in error.

*George M. Napier, attorney-general, John C. Mitchell, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

Russell, C. J., dissenting. It may be that none of the grounds of the motion for new trial dealt with in headnotes one to eight require the grant of a new trial, though I can not approve all of the rulings made. However, I am of the opinion that the court should not have admitted the evidence dealt with in the ninth headnote, and that the admission of this testimony was obliged to be of the gravest prejudicial consequence in fixing the rights of the accused at the hands of the jury. The Latin words "res gestæ," translated literally, mean "things done," and in criminal cases have reference to occurrences contemporaneous with an alleged crime, or so nearly so as to be free from device or afterthought. The statement of the husband to his wife, as explained by her evidence, does not come within this classification. The husband did not see any

one, speak to any one, or hear any one outside his bedroom; and when he remarked to his wife that it was the same white man and negro who were here Wednesday night, it was mere guesswork and his utterance the opinionative expression of a retrospective imaginary picture which might or might not have been the subject of verification. I also dissent from the ruling in the tenth and twelfth headnotes. As to the latter, it is my opinion that one accused of crime is entitled to have the precise language of section 1010 of the Penal Code given to the jury; and certainly, in the absence of such an instruction, the effect of the plain language of the Code should not be minimized by differentiation between every possible theory and every reasonable theory in the manner in which the instruction was given in the present instance. It will be an evil day in Georgia when juries do not listen with profound respect and perfect confidence to the utterances of the presiding judge. So our law wisely forbids even an intimation as to what has been proved or omitted to be proved in the trial of a case. The use of the expression, "in so far as the State relies for conviction in this case upon circumstantial evidence," in connection with the instruction as to circumstantial evidence, can suggest no other inference than that there was direct evidence which each juror would think for himself he had overlooked or forgotten; and yet as a matter of fact there is no direct evidence of the guilt of the accused in the entire record.