## BLACK *v.* THE STATE.

No. 12289. OCTOBER 13, 1938. REHEARING DENIED NOVEMBER 19, 1938.

*H. A. Allen,* for plaintiff in error.

*M. J. Yeomans, attorney-general, John A. Boykin, solicitor-general, J. W. LeCraw, Ellis G. Arnall* and *E. J. Clower,* contra.

JENKINS, Justice. 1. The testimony of two alleged eye-witnesses to the homicide by pistol wounds, and of corroborative witnesses, who testified that they saw the defendant in an automobile near the scene just prior thereto, although controverted by alibi testimony for the defendant and by his statement to the jury that he was then two or three miles distant in a night-club, authorized the verdict of guilt of murder.

2. Where, over objection, the court admits evidence with a statement that the objection will be passed on later in the trial, it is incumbent upon the objecting party, if the evidence be inadmissible, to direct the attention of the court thereto either before or at the close of the testimony, and to move to exclude it, and upon his failure to do so he will be held to have waived his objection. *Cawthon* v. *State,* 119 *Ga.* 395 (7) (46 S. E. 897). A like rule obtains where evidence is provisionally admitted on condition that it will later be connected properly by other testimony. *Thompson* v. *State,* 166 *Ga.* 512 (6) (143 S. E. 896), and cit.; *Stone* v. *State,* 118 *Ga.* 705 (9) (45 S. E. 630, 98 Am. St. R. 145); *Jordan* v. *State,* 150 *Ga.* 79 (2) (102 S. E. 424). The defendant objected to testimony by a witness, Weaver, that one of the alleged eye-witnesses referred to the homicide in a conversation with the witness at the hospital, where the deceased was taken after the shooting.

The testimony was admitted on the statement of the solicitor that it would be connected up later with the defendant; and if not, would be excluded on objection. Later a police officer, Moseley, gave similar testimony, to which the defendant objected, but while mentioning the previous testimony he made no objection thereto or motion to exclude it. The court excluded all of this testimony of the latter witness, except the mere fact that the alleged eye-witness made a "report" to him by giving "an address on Auburn Avenue and a telephone number where he could be reached." On cross-examination the defendant brought out that "the address and telephone number" which were so given "were on Auburn Avenue." Under the rule stated, the exception to the admission of the testimony of the first witness is without merit. The exception to the testimony of the second witness is also without merit, since the defendant himself elicited similar evidence; and in no event does it appear that this apparently harmless later testimony could have been prejudicial.

3. The court did not err in admitting, on the State's cross-examination of a witness for the defendant, testimony that a few hours before and on the night of the homicide, the witness saw the defendant in his room flourishing a pistol, which the witness further described as a "kind of shiny one, kind of nickel-plated like," over the objection that the accused had offered no evidence as to character, and such testimony put in issue his character for violence, where one of the alleged eye-witnesses swore that the pistol which he saw the defendant fire at the deceased was "a shiny one," and the evidence was thus corroborative of the eye-witness's testimony attacked by the defendant.

4. Testimony indicating motive for the commission of a homicide is admissible, even though it may show the commission of another offense or relate to the character of the defendant, which he has not put in issue. See *Sligh* v. *State,* 171 *Ga.* 92 (8), 111 (154 S. E. 799); *Williams* v. *State,* 152 *Ga.* 498, 521 (110 S. E. 286); *Frank* v. *State,* 141 *Ga.* 243, 257 (80 S. E. 1016); *Cooper* v. *State,* 182 *Ga.* 42 (3) (184 S. E. 716, 104 A. L. R. 1309). Therefore the court did not err in admitting testimony that the deceased, two or three years before the homicide, had ordered the defendant out of the store of the deceased because the defendant was working on customers a game known as the "greasy pig," consist-

ing of three bottle stoppers with a. pea supposedly under one of them, and requiring the guessing or catching of the pea, over the objection that this testimony, relating to gambling by the defendant, put his character in issue without evidence or statement from him as to character. Remoteness in point of time, which might have affected the weight of such evidence, "did not wholly destroy its probative value and render it inadmissible." *Odum* v. *State*, 183 *Ga*. 854 (3) (190 S. E. 25) ; *Keener* v. *State*, 18 *Ga*. 194 (7), 228 (63 Am. D. 269) ; *Shaw* v. *State*, 60 *Ga*. 246 (2) ; *Everett* v. *State*, 62 *Ga*. 65 (2) ; *Smith* v. *State*, 167 *Ga*. 271 (3) (145 S. E. 517) ; 13 R. C. L. 925, § 227; 2 Wharton's Criminal Evidence (10th ed.), §§ 902, 918.

5. Whether or not the exception that the court erred in failing, without request, to charge the jury "on the law of voluntary manslaughter," be sufficient, in view of the additional language in the exception that "the question of voluntary manslaughter" was "in the case" because of the testimony of the two alleged eye-witnesses, as quoted in this ground, neither the failure to charge the law of voluntary manslaughter nor the failure to charge the law of "justifiable homicide under the fears of a reasonably courageous man," to which exception is also taken in the same ground, was erroneous. It appears from the testimony of these witnesses that the defendant had been seated in a parked automobile, rode therein so as to follow the deceased after the deceased had left his own store; that the defendant stepped from his car, and, without any warning, previous threat, or aggressive or provocative act by the deceased, fired at the deceased across the hood of the car, and inflicted the fatal wounds; and that the deceased did not fire back until after the defendant had thus fired his pistol. The mere facts that one of the witnesses said that he did not see the pistol of the deceased, and only saw the fire from it, and that the other witness said that he did not "know where [the deceased] got that gun from," and "I don't know whether he already had it or whether he got it out —I just saw him fire," were not sufficient to put in issue either voluntary manslaughter or justifiable homicide.

6. Where the judge, substantially in the language of the Code, §§ 26-1002-26-1004, correctly charged that "murder is the unlawful killing of a human being in the peace of the State by a person of sound memory and discretion, with malice aforethought, either

express malice or implied," and correctly defined express and implied malice, this was in effect an instruction that to constitute murder there must be malice, so that, in the absence of a written request for elaboration, there was no error either in failing to charge more expressly that there must be malice, or in failing to charge that "there could be no malice without motive." See, in this connection, *Lewis* v. *State*, 129 *Ga.* 731 (4) (59 S. E. 782).

7. In the absence of proper written request, it is not error to fail to instruct the jury on the subject of the credibility of witnesses, or to fail to give the rule as to the reconciliation of conflicting testimony. *White* v. *State*, 141 *Ga.* 526 (3) (81 S. E. 440), and cit.; *Lightfoot* v. *State*, 160 *Ga.* 512 (2) (128 S. E. 743). Furthermore, the court did charge the law as to impeachment of witnesses and the credit to be given such opposing testimony, and there was no exception to this instruction.

8. The following charge was not subject to the exception that it expressed an opinion as to what had or had not been proved: "I have read to you the charge in this indictment. You have heard the contentions of the State on the one hand, and you have heard the contentions of the defendant on the other. You look to the facts and circumstances of the case as disclosed by the evidence and the defendant's statement, you giving it such weight and credit as you think it is entitled to receive; and you determine, gentlemen, what the truth of the matter is, and let your verdict speak the truth as you see fit."

9. The right of the jury to recommend mercy was sufficiently stated, and there was no error in failing to emphasize such right more strongly, in the following instruction: "If you should find him [the defendant] guilty, the form of your verdict would be, 'We, the jury, find the defendant guilty;' and that verdict, gentlemen, would mean that the defendant would receive a sentence of death by electrocution unless you should go further in your verdict, as you have the right to do under our law, and recommend him to the mercy of the court. In that event, gentlemen, the form of your verdict would be, 'We, the jury, find the defendant guilty, and we recommend him to the mercy of the court.' That verdict, gentlemen, would mean that the defendant would receive a sentence of imprisonment in the penitentiary for the remainder of his natural life."

140

10. The 9th and 10th grounds, which the judge did not un-. qualifiedly approve, relating to his rebukes of witnesses for the defendant, fail to show any improper action by the judge or any prejudice to the defendant. As to the first ground, complaining of the judge's statement to a witness, who had been pointing and gesticulating with his hands in describing the location of an entrance, room, and cold-drink stand in a night-club, "Don't point with your hands, let them be still," the court certified that "the witness chair is about three feet from the judge's chair," that the witness "was continually waving his right arm full-length toward the judge in useless, unnecessary motions," that "no objection was made to the court's instruction to discontinue this," and that the "witness continued to point with his hands in other directions." As to the second ground, complaining of the judge's statement to a witness, Ralph Perry, to say "Yes, sir, and no, sir" to the attorney for the *defendant,* the judge certified that this ground "is incorrect," that "no such instruction was given to the witness *Ralph Perry,*" but that "an instruction of the general nature of that set out was given to witness *Jimmie* Perry, to which no objection was made." *Judgment affirmed. All the Justices concur.*

ON MOTION FOR REHEARING.

JENKINS, Justice. 1. Paragraph 2 of the syllabus opinion is attacked on the ground that this court overlooked that it was unnecessary for the defendant to repeat his objection at a later stage of the case to testimony by Weaver, the first witness, as referred to in the syllabus, which the court had provisionally admitted, because the court said: "I am letting it in for the present on the statement of the solicitor that it will be connected up later; if it is not, I will rule it out later on;" that the judge thus assumed the responsibility of ruling out later the inadmissible evidence, whether objection thereto was renewed or not. However, the court, preceding the admission of this testimony, also said: "I will let it in now on that statement from the solicitor that it will be connected later on; if it is not connected later on, I will ,sustain the objection, *if you make an objection.*" In view of this statement of the court, and the rule that at the later stage of the case the attention of the court must be specifically called to the objectionable testimony and a ruling be properly invoked thereon, the failure of the court to repeat in its second statement what had already been said did not relieve counsel of the required duty.

It is also contended that paragraph 2 of the syllabus overlooked a statement of counsel for the defendant, at the later stage of the case when the second witness, Moseley, was testifying, in which it is claimed that objection to the first testimony of Weaver was repeated. However, the recitals in the record do not support this contention, since, as the syllabus states, while in objecting to the later testimony reference was made to the former testimony, there was no motion to exclude it or even any specific objection thereto; and this the court plainly understood at the time, by ruling only as to the admissibility of the testimony then being offered.

2. The only other ground of the motion relates to paragraph 4 of the syllabus, in which it was held, with citation of authorities, that there was no error in admitting testimony that the deceased, two or three years before the homicide, had ordered the defendant out of the store of the deceased, because the defendant was working a gambling game on the customers of the deceased; and that remoteness in point of time, while affecting the weight of the evidence, did not destroy its admissibility. The defendant cites *Monroe* v. *State*, 5 *Ga*. 85 (3); *Pound* v. *State*, 43 *Ga*. 88 (3), 131; *Horton* v. *State*, 110 *Ga*. 739 (35 S. E. 659); *Baker* v. *State*, 142 *Ga*. 619 (83 S. E. 531); *Thomas* v. *State*, 51 *Ga. App*. 455 (180 S. E. 760). Examination of these cases shows that they are distinguishable from the present case, and are not in conflict with the numerous cases cited in the syllabus. In the present case the defense set up by the defendant was an alibi. He denied that he was the person who committed the homicide. If the defense relied on had been self-defense, or that the defendant in committing the homicide had acted upon the fears of a reasonable man, then and in that event proof of such a long-past transaction, in no wise connected with or throwing light upon the defense relied upon, might be inadmissible. But where, as here, the defendant denies that he was the person who committed the homicide, and seeks to establish an alibi, proof of circumstances even remote, that might reasonably tend to throw light upon the state of feeling of the defendant toward the deceased, and to establish a motive for the commission by him of the crime, would properly be admissible, and the remoteness of the previous incident would be considered by the jury in determining what weight, if any, should be given to it.

*Rehearing denied.*