8652

## STATE v. VAUGHN.

1. JURORS.—If appellant does not show abuse of discretion in trial Judge in standing aside and presenting jurors, exception thereto will not be considered.

2. IBID.—Where a defendant during trial withdraws his plea of *not guilty* he cannot afterwards insist on appeal that there was error in empannelling the jury.

3. CAPITAL PUNISHMENT—ELECTROCUTION.—The act 27 Stat. 1912, substituting electrocution for hanging, is not an *ex post facto* law when applied to the punishment of a crime committed before its enactment.

4. PLEADING—WAIVER.—Where a defendant after going to trial on a plea of not· guilty, withdraws the plea by statement of his counsel to the effect that the only issue to be referred to the jury was "recommendation to mercy," and it was so understood and acted upon by all the parties and the Court without objection, he cannot after verdict of "guilty" insist that the Court should not have permitted him to withdraw his plea without explaining to him its effect. Nor that the plea is not binding because not taken by the Court according to the rules of accepting pleas.

Before R. O. PURDY, special Judge, Greenville, October, 1912.   Affirmed.

Indictment against T. U. Vaughn.   Defendant appeals.

*Messrs. McCullough, Martin & Blythe* cite: *Statute providing for electrocution is ex post facto:* 134 U. S. 171; 43 L. R. A. 157; 37 A. S. R. 587.   *Court should advise prisoner of effect of plea:* 14 C. Dig. 1233; 22 L. R. A. (N. S.) 463; 41 Cal. 458; 73 At. 637; 88 S. C. 225; 12 Cyc. 353; 42 Miss. 639; 63 S. C. 170.

*Solicitor P. A. Bonham* and *Mr. J. J. McSwain,* contra. *The Solicitor* cites: *As to indifference of juror:* 65 S. C. 242; 69 S. C. 295.   *Defendant is guilty under doctrine of:* 88 S. C. 225.

STATEMENT OF FACTS.

The defendant was placed on trial, under an indictment containing three counts—the first charging him with rape upon Etta Jackson, the second with intent to ravish her, and the third with carnal knowledge of her, she being a woman-child under fourteen years of age.

After the trial had proceeded from the 24th until the 26th of October, 1912, the record shows that the following took place:

"Mr. Martin: May it please the Court, after consultation with the Solicitor and the gentlemen representing the State, and with the defendant himself, we have reached an agreement that at this stage the defendant will withdraw his plea of 'not guilty' and enter a plea of 'guilty' with the understanding that he may go upon the stand and make a full statement, or such statement as he may desire, to the Court and the jury, and the only question which we will submit to the jury, without argument, is the question of a recommendation to mercy."

"Mr. Bonham: With the understanding that this is not accepted by the State as a compromise at all, but that it will shorten affairs, and prevent the necessity of offering further testimony along this line, and save the other little girls of the embarrassment of going on the stand and testifying. We are willing to submit the matter to the jury, twelve fair-minded men, as to what punishment shall be inflicted upon this man. We want it understood that this is no compromise at all. We consider that all the jury wants to know is the truth, and we only agree to this in order that the case may be determined without going into next week."

T. U. Vaughn, the defendant, then took the stand as a witness, and on cross-examination of the Solicitor, thus testified:

"Now you have pleaded guilty to these charges, and have thrown yourself on the mercy of the Court and jury. You don't want to conceal anything from the jury? No, sir.

You want them to know the entire enormity of your offense out there? Yes, sir; there is nothing hidden in my heart. Then you do not deny that Etta Jackson is the only little girl out there that you have ruined? (To his counsel: Must I answer that?) (Mr. Martin: Yes, tell the truth.) Yes, I do not deny it. You had intercourse with Della Cooper? Not at the Home. But you had intercourse with her? Yes, sir. You had intercourse with Beulah Dunnoway? Yes, sir. You had intercourse with Sadie Craig? Yes, sir. You had intercourse with Mamie Corbin? No, sir. You had intercourse with Blanche Fowler? Yes, sir. Five little girls out there, with whom you bore the relationship of parent and child, and whom you ruined? Yes, sir; to my shame I must admit it. Mr. Vaughn, you are here asking for the mercy of the Court and jury. Did you at the time you were having intercourse with these little girls, realize that your act blighted their lives? I didn't; I couldn't have realized it; now I do." •

At the close of his testimony, the record shows that the following took place:

"By Mr. Patton, foreman of the jury: You said that you had intercourse with these girls. I want to know if they consented to what you did? I will say this, that actually no force was ever used. I assume full responsibility for what was done, in that I stood in the attitude of a father to them. I hate to say that, but there was never anything done without their consent. What age were they? I don't know. I suppose from fourteen to fifteen years old, and on up."

His Honor, the presiding Judge, in charging the jury, thus explained the nature, and the force and effect of the defendant's plea: "After the State had offered a number of witnesses, on the charges brought against the defendant, and after their testimony had been taken in open Court, the defendant appeared before you in open Court and withdrew his plea of 'not guilty' with the understanding that he be allowed to make a full statement before you, with the right

of cross-examination on the part of the State. In other words, he was to go on the witness stand as a witness, and make his statement, which he did make to you, and then withdrew his plea of 'not guilty' and entered a plea of 'guilty.' While it is out of the usual order of things, yet counsel thought that by taking this method, they would stop further inquiry on the part of the State, and stop the necessity of taking further testimony before you.

"Had this case gone on in the usual manner, and come before you at the conclusion of the testimony, it would have been my duty to charge you that you should consider each count in the indictment separately. In other words, if you believed that the testimony, beyond a reasonable doubt, warranted a conviction as to rape, then you can find the defendant guilty, with or without recommendation to mercy. Or, if not guilty of that, then you should consider the other charges made against him, and if found guilty you could convict him in accordance with the testimony. If found not guilty, you should say so. It would have been my duty to call your attention to these various counts, and to have instructed you, that if you did not convict on one count, you could convict on either of the other two counts, and that your verdict should say on what charges you convicted him. If you found him not guilty, you should say 'not guilty.'

"Now all that aspect of the case is changed. He has withdrawn his plea of 'not guilty' and entered a plea of 'guilty.' So that now, gentlemen of the jury, it is for you to consider all the facts and circumstances surrounding the case and determine whether or not you should recommend him to the mercy of the Court. That is the whole issue for you. Because the plea of guilty carries with it a plea of guilty to the highest offense charged in the indictment, and that is the whole question for you. It is for you to say, whether the death penalty shall be inflicted. If you should come in and say 'guilty,' that would mean that in due time the defendant would be taken to the electric chair and there suffer the

penalty of death. If you say that you will recommend him to the mercy of the Court, and you understand that his plea is entered with the understanding that you shall consider his case, it will be my duty to sentence the defendant to hard labor in the penitentiary for a period of not less than five years nor more than forty years.

"You have heard the testimony; you have heard his statement. You are just as capable of understanding the nature of this case as I. His plea has been made in open Court, and it is for you to consider all the facts and circumstances, as you have heard them brought out on the stand, and it is for you to say whether you will write your verdict 'guilty' or whether you will recommend him to the mercy of the Court."

The jury found a verdict of "guilty" and the Court imposed upon the defendant, the sentence of death by electrocution, on the 20th of December, 1912, whereupon he appealed upon the following exceptions:

(1) "Because his Honor erred, it is respectfully submitted, in rejecting the proposed juror, N. J. Rector, there being no sufficient evidence in law of bias or other disqualifications, and error in refusing motion for new trial upon this ground.

(2) "Because his Honor erred, it is respectfully submitted, in rejecting the proposed juror, J. B. Brockman, there being no sufficient evidence in law of bias or other disqualifications, and error in refusing motion for new trial upon this ground.

(3) "Because his Honor erred, it is respectfully submitted, in rejecting the proposed juror, G. W. Morrow, there being no sufficient evidence in law of bias or other disqualifications, and error in refusing motion for new trial upon this ground.

(4) "Because his Honor erred, it is respectfully submitted, in accepting the juror, Avery Patton, against defendant's objection, since he should have been excluded for bias,

and error in refusing motion for new trial upon this ground."

(5) and (6) Exceptions were abandoned.

(7) "Because his Honor erred, it is respectfully submitted, in sentencing defendant to electrocution in the State penitentiary, under the direction of the superintendent of that institution, in accordance with act of 1912, 27 St. at L. 702, since as to the case at bar, the said act was unconstitutional in that it is an *ex post facto* law, and therefore contravenes article 1, section 8 of the South Carolina Constitution of 1895, and also article 1, section 9 of the United States Constitution, and is therefore void.

(8) "Because his Honor, in charging in substance that the plea of not guilty was withdrawn and a plea of guilty substituted, when defendant did not, and was not required to enter such plea in person, either orally or by sign of assent, as required by law in a capital case—especially since his statement on the stand was a denial of guilt, and both the Court and defendant's counsel erred in construing such statement as a confession of guilt; it was a confession of guilt of great moral wrong, but not of rape or other charge of this indictment.

(9) "Because his Honor erred in failing to charge that the issue as to whether defendant was guilty or not guilty was one of the issues in this case—

(a) Because he had not personally entered a plea of guilty as required by law—

(b) Because his sworn testimony not only did not amount to a confession of any offense charged in the indictment, but contradicted the plea of guilty as to each and every offense.

(10) "Error of his Honor, the presiding Judge—

(a) In failing to advise the prisoner of the nature and consequences of his plea, and

(b) In failing to have it affirmatively appear that the alleged plea of the confession was voluntary—as the law requires in capital cases."

September 20, 1913.

MR. CHIEF JUSTICE GARY, after stating the facts as above, delivered the opinion of the Court: The first, second, third, and fourth exceptions will be considered together.

There are two reasons why these exceptions cannot be sustained: (1) The defendant's attorneys have failed to show an abuse of discretion on the part of his Honor, the presiding Judge, and (2) the right to insist upon the errors assigned, was waived when the defendant withdrew his plea of "not guilty."

The fifth and sixth exceptions will not be considered, for the reason that they were abandoned.

The recent case of the *State* v. *Malloy, ante* 441, which was decided by this Court, shows that the seventh exception cannot be sustained.

The eighth, ninth, and tenth exceptions will be considered together. Conceding that the defendant would have been entitled to all the rights claimed in these exceptions, if he had insisted upon them, in the manner provided by the rules of practice, nevertheless, it clearly appears that he waived such rights in expectation that the jury would recommend him to the mercy of the Court, thereby enabling him to escape the death penalty. At the time he withdrew his plea of "not guilty" he had no reasonable grounds for supposing that the jury would render any other verdict than that of "guilty," and the method which he adopted, it would seem, might naturally have been expected to increase his chances of appealing to the sympathy of the jury, and thereby induce them to recommend him to the mercy of the Court.

There is no doubt that the defendant had the right to waive compliance with the technical forms of law, as to the manner in which his plea should be accepted.

"Waiver is voluntary, and implies an election to dispense with something of value, or forego some advantage, which the party waiving it, might at his option have demanded or

insisted upon. A waiver takes place, when a man dispenses with the performance of something which he has a right to exact. A party may waive a constitutional as well as a statutory provision for his benefit, as a trial by jury, though that mode is guaranteed to him by the Constitution; and when waived by such party, he will be estopped from setting them up, or claiming them." Herman on Estoppel & Res. Judicata, vol. 2, page 954.

The same author, at page 958, says: "A defendant has a constitutional right to a speedy trial, yet he may waive this provision by obtaining a continuance. He may plead guilty, which generally dispenses with a jury trial." "* * * A defect in the Constitution or organization which does not prevent the presence of twelve competent jurors, by whose votes the indictment is found, and which could have been cured, if the attention of the Court had been called to it at the time, or promptly remedied by the empanelling of a competent grand jury, is waived if the defendant treats the indictment as sufficient, pleads not guilty, and goes to trial on the merits of the charge. There is good sense in this conclusion. The indictment is the charge of the State against the defendant, the pleading by which he is informed of the fact, and the nature and scope of the accusation. When the indictment is presented, that accusation made, that pleading filed, the accused has two courses of procedure open to him. He may question the propriety of the accusation, the manner in which he has been presented, the source from which it proceeds, and have these matters promptly and properly determined, or waiving them, he may put in issue the truth of the accusation, and demand the judgment of his peers on the merits of the charge. If he omits the former and chooses the latter, he ought not, when defeated on the latter, when found guilty of the crime charged, to be permitted to go back to the former, and inquire as to the manner and means by which the charge was presented." The foregoing language and that from

Herman on Estoppel and Res Judicata were quoted with approval in the case of the *State* v. *Faile*, 43 S. C. 52, 20 S. E. 798, in which there was an appeal from the sentence of death.

Nothing was omitted during the trial of which the defendant has just cause of complaint. He, his attorneys, the presiding Judge, and the jury, unquestionably understood fully the nature, force and effect of the plea made by the defendant; he was represented by exceedingly able counsel; the plea was not interposed until two days after the commencement of the trial; the presiding Judge clearly stated the nature, force and effect of the plea, to which neither the defendant nor his counsel made any objection; the testimony which had then been introduced indicated that there were no reasonable grounds for hoping that the jury would render any other verdict than that of guilty.

These exceptions are, therefore, overruled.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed and that the case be remanded to that Court for the purpose of having another day assigned for carrying into execution the sentence of death, imposed upon the defendant.

*The remittitur in this case is held up so that appellant may apply for writ of error to United States Supreme Court if so advised, notice of which intention has been given.*