## COFER *v.* THE STATE.

1. We can not say as a matter of law that the verdict was without evidence to support it.
2. The court committed no harmful error in his instructions to the jury; and the jury having found the defendant guilty upon sufficient evidence, and the trial judge having approved their finding, this court will not interfere with the exercise by the trial judge of his discretion in refusing a new trial.
3. None of the assignments of error contained in the amendment to the motion for a new trial require a judgment reversing the order of the trial judge overruling the motion for a new trial.
(*a*) The evidence of the female alleged to have been assaulted was sufficiently corroborated.
(*b*) Even if corroboration of the testimony of a female alleged to have been raped be indispensable to authorize a conviction, the nature and amount of corroboration to be supplied in any case is a matter exclusively for the jury; and as there were several circumstances adduced in the testimony in this case, it can not be held as a matter of law that these circumstances were insufficient to authorize the jury to find that the testimony of the prosecutrix was sustained.

---

Criminal Law, 16 C. J. p. 131, n. 96; p. 132, n. 6; p. 942, n. 63; p. 952, n. 22; p. 1021, n. 46 New; p. 1025, n. 96; p. 1028, n. 34; p. 1043, n. 37; p. 1049, n. 82; p. 1050, n. 84; p. 1180, n. 72; p. 1249, n. 72 New; 17 C. J. p. 252, n. 16; p. 256, n. 62; p. 271, n. 41; p. 359, n. 64; p. 360, n. 65.

Rape, 33 Cyc. p. 1437, n. 67; p. 1486, n. 12; p. 1497, n. 86, 88 New; p. 1512, n. 64, 65.

(c) Construed in connection with the entire charge of the court, the instruction "Before you would be authorized to convict the defendants or either of them there must be other evidence, independent of hers, sufficient to connect the accused with the offense charged,—an inference of their guilt; and [it] is for the jury to say whether the evidence has been corroborated or not," is not for any reason assigned erroneous. On the contrary, the foregoing instruction was very favorable to the accused, in that it placed upon the State the burden of producing evidence, independent of the testimony of the injured female, "sufficient to connect the accused with the offense charged."

(d) Reference to the case on trial as "this case of rape you are trying," when viewed with the context and the charge of the court as a whole, is not subject to the objection that it was an invasion of the province of the jury and an intimation of an opinion that the defendants were guilty of rape.

(e) The fact that a codefendant in the same trial with the plaintiff in error was found guilty of assault and battery, while the plaintiff in error was convicted of rape, affords to the latter no ground why a new trial should be granted. In consideration of a motion for new trial the merits of the movant's claim to this right should be determined solely by the record as affecting him, and not by consideration and comparison with any codefendant.

(f) It was not error for the court to instruct the jury, where three defendants were being tried together, "Should you, under the rules given you in charge and all the evidence in the case, find the defendants or either one of them guilty, and desire to recommend to the mercy of the court, then in that event you would have to add also and state what the punishment would be, and you would be confined between the minimum of one year and the maximum of twenty years, and would say further, and we fix the punishment of the defendant, naming each defendant, as follows: minimum amount not less than one year and maximum amount not greater than twenty years, anywhere between those two; and really you have the right to make the minimum and the maximum the same." The jury could not but have understood from this instruction that they had the right to fix different punishments for each defendant. And that they did so understand is established by the verdict in this case, finding one of the accused only guilty of assault and battery.

(g) The excerpt from the charge quoted in the foregoing subdivision (f) was not erroneous because it prevented the accused from receiving a "smaller minimum and maximum sentence than that of his codefendant."

4. Since all three of the defendants in their joint trial were sworn as witnesses, the exception based upon the failure of the court to give in charge to the jury section 1036 of the Penal Code of 1910, upon the subject of the right of the defendant to make a statement, and as to its weight and effect, is without merit. In the circumstances, it would have been error to instruct the jury upon the subject of the defendant's statement. *Staten* v. *State*, 140 *Ga.* 110 (78 S. E. 766). See also *Burnsed* v. *State*, 14 *Ga. App.* 832 (82 S. E. 595); cf. *Collins* v. *State*, 153

*Ga.* 95, 101 (111 S. E. 733); *O'Berry* v. *State,* 153 *Ga.* 880 (7) (113 S. E. 203).

No. 5463. DECEMBER 15, 1926. REHEARING DENIED FEBRUARY 19, 1927.

Rape. Before Judge Stark. Gwinnett superior court. May 5, 1926.

*I. L. Oakes* and *O. A. Nix,* for plaintiff in error.

*George M. Napier, attorney-general, Pemberton Cooley, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

RUSSELL, C. J. 1, 2. This record presents a very unusual case. Sib Britt, Wince Cofer, Louis Ross, Albert Leverett, and Eldridge Wilder were indicted in Gwinnett superior court for the offense of rape alleged to have been committed on the person of one Vera I. Center. At the September term, 1925, Britt, Cofer, and Wilder were jointly tried. Cofer and Britt were found guilty of rape, and Wilder of assault and battery. The jury recommended mercy in the cases of Cofer and Britt, fixing the penalty at one year minimum, and two years maximum. Cofer and Britt each made a separate motion for a new trial, and Cofer excepts to the judgment overruling his motion. According to the testimony of the prosecutrix, she was carried in an automobile for a ride from the office of an oculist in the City of Atlanta to the town of Tucker in DeKalb County, by the defendants Ross and Leverett. At Tucker the car was stopped, and Ross, who had been raised in that section, got out of the car and had a conversation with Britt, Cofer, and Wilder, who lived a few miles away in the adjoining county of Gwinnett. At the conclusion of the conversation Ross returned to the automobile in which the girl was riding, and they drove to Britt's pasture, in Gwinnett County. Ross, Leverett, and the girl had been there only a few minutes when they were overtaken by Britt, Cofer, and Wilder. According to the testimony of the prosecutrix, Ross, Cofer, Britt, and Leverett all made indecent proposals to her, Ross having taken her near the stream in the pasture and made these proposals before the arrival of Cofer, Britt, and Wilder upon the scene. Without going into all the details, the prosecutrix swore that Britt and Leverett by force had sexual intercourse with her. Cofer did not himself have sexual intercourse with her, because he was interrupted by Leverett; but he was present, according to the prosecutrix, with the intent to commit an outrage upon her person at the time that she was raped by

cach of them.   No reference need be made to Wilder's part, inasmuch as his case is not before this court.   As observed more than a century ago by Blackstone, rape is a charge easily made, hard to prove, and harder still to be defended against; but since a careful review of the record in this case satisfies us that the merits of all of the exceptions contained in the record depend largely upon the evidence and the credibility accorded by the jury to the testimony of the prosecutrix, we shall consider some of the very peculiar circumstances in proof in this case from the mouth of the prosecutrix herself, notwithstanding which the jury, having the complaining witness before them in the county of the residence of the defendants and where the girl was herself a stranger, and being thus enabled to observe her manner of testifying, and her demeanor upon the stand, nevertheless believed her story.   The prosecutrix had no acquaintance with Ross or Leverett prior to the afternoon of the alleged outrage.   She was awaiting a street-car to go from her home to the office of an oculist, when Ross and Leverett came along in an automobile and asked if she did not want to ride.   She accepted the invitation and they carried her to the office on Mitchell Street.   They waited outside until her return to the sidewalk, when she was again invited and accepted an invitation from them to take a drive.   She accompanied them on this pleasure ride of several miles over roads she had never before traveled, and she did not demur to going even further after leaving Tucker to ride over into Gwinnett County without inquiry, nor does she appear to have asked to be carried home until it was nearly sundown and until Britt, Cofer, and Wilder came upon the scene at the pasture.   According to the testimony, in the numerous assaults made upon her she offered all resistance that was possible under the circumstances; but when she finally escaped and when Ross and Leverett agreed to carry her back to Atlanta, she admitted that she consented and allowed each of them in turn to have sexual intercourse with her in the automobile en route to Atlanta.   She further admitted that, having lost her pocket-book containing $1 in the encounter at the pasture in which she was several times knocked down, she accepted $1 from one of them and kissed them good-bye as she alighted from the car upon reaching a sidewalk near her home.   The father of the injured female was a night-watchman, and was away from home when the girl arrived, but she immediately made complaint

56

to her mother upon her entrance into her home. The mother called policemen, and they, finding scratches and bruises upon the girl, were diligent in arresting Ross and Leverett during the same night, although one of them was found several miles from the city in his house in Gwinnett County. In corroboration of the girl's testimony, the policemen testified to signs of physical violence upon her person, and a physician testified that she had a scratch on her face, though her garments were not torn or bloody, and the examination of the physician tended to show that the girl had probably previously indulged in sexual intercourse.

We have set forth the preceding general statement of facts, because the result reached by the jury under the circumstances is somewhat remarkable in that ordinarily several circumstances testified to by the prosecutrix herself would ordinarily discredit a female complaining of rape. An analysis of these circumstances, however, shows that each and all of them are of such a nature as not to require the jury to impeach the witness but merely to authorize them to discredit her. Upon the subject of corroboration, too, it is well settled, as to all criminal cases where corroboration may be deemed legally necessary, that the amount of corroboration required to induce mental conviction on the part of the jury beyond a reasonable doubt is a matter solely for the jury itself. So we can not hold as a matter of law that the verdict is contrary to the evidence, as alleged in the general grounds of the motion for a new trial. And since the trial judge has approved the verdict, his discretion in overruling that ground of the motion will not be controlled. The rulings contained in the first and second headnotes require no further elaboration, except in so far as it may be necessary to consider briefly the insistence of learned counsel that Cofer had no sexual intercourse with the injured female. From this fact it is argued that the verdict as to Cofer is wholly unsupported by the evidence. We have no doubt that the fact that Cofer did not have intercourse with the complaining female was most strongly and ably argued before the jury. However, as a matter of law one may be guilty as a principal in the second degree, aiding and abetting a rape to be committed, when nothing is further from his thought than a desire to have sexual intercourse with the woman in question; and in this case the evidence for the State shows that Cofer had the will and desire to have sexual inter-

course with this female. The case of Lord Audley, 3 Corbett's State Trials, 402, who was convicted of rape upon his own wife through the instrumentality of a ruffian minion, appears in almost every text-book on the common law of England, and may also be found in Corpus Juris and Ruling Case Law. In this case, as already stated, Cofer was present at the two rapes committed, according to the statement of the girl, and at that time struck her with such force as to knock her down. He certainly did not respond to her cries for help or do anything to prevent them. His failure to interfere would not authorize his conviction if he was a mere bystander; but the jury had a right to believe from the circumstances that a plot was made at Tucker between Cofer and Ross, as well as others in the party, to meet the girl at the pasture named as the rendezvous and to have sexual intercourse with her, if not by fair means then by foul; and the testimony that Cofer endeavored to have intercourse with the girl, and her testimony that the only thing that prevented was the precipitateness of Leverett, was no doubt accepted by the jury. All of the details of the rencounter at the pasture tended to establish, if the story of the prosecutrix was true at all, that Cofer was present aiding and abetting the rapes committed by Britt and Leverett. The evidence does not show that Cofer was guilty as principal in the first degree, but the evidence for the prosecution, if credible, is ample to authorize his conviction under the indictment, in which he was charged as principal in the first degree, of being guilty as principal in the second degree. *Rawlings* v. *State,* 163 *Ga.* 406 (136 S. E. 448).

3. The rulings contained in the third and fourth headnotes require no further elaboration.

*Judgment affirmed. All the Justices concur, except Atkinson and Hines, JJ., who dissent.*