17865

THE STATE, Respondent, v. Benjamin Franklin WORTHY, Appellant

(123 S. E. (2d) 835)

450

*Messrs. R. E. Browne, III, T. Louis Cox* and *Louis P. Howell,* of Spartanburg, and *Frank P. Cooke,* of Gastonia, *for Appellant,*

*Messrs. John H. Nolen, Solicitor,* and *J. Wright Nash, Assistant Solicitor,* of Spartanburg, *for Respondent,*

January 30, 1962.

Moss, Justice.

Benjamin Franklin Worthy, the appellant herein, was indicted by the Grand Jury of Spartanburg County at the June 1960 term of the Court of General Sessions and charged with (1) rape, (2) assault with intent to ravish, and (3) assault and battery of a high and aggravated nature. The indictment alleged that the crimes took place in Spartanburg County on April 3, 1960. The appellant being without counsel, the Presiding Judge appointed competent attorneys to represent him. This case was continued at the June term of court on motion of the attorneys for the appellant on the ground that they had not had sufficient time to prepare for trial. The case was also continued at the July term because of the absence of a witness for the State.

At the 1960 October term of Court of General Sessions, this case was called for trial and the appellant moved to quash the venire on the ground that Negroes had been systematically excluded from the jury panel. This motion was refused after the taking of the testimony of the Clerk of the Court. The Trial Judge found as a fact that there "has been no discrimination, or the systematic exclusion of jurors on account of race, color or creed."

This case was called for trial on October 19, 1960. The appellant was duly arraigned and entered a plea of "Not Guilty", and announced his readiness for trial. In the selection of the jury, all prospective jurors were placed upon their individual *voir dire*. The jurors were asked the statutory questions contained in Section 38-202 of the 1952 Code of Laws. After the jury had been so selected and duly sworn, one of the attorneys for the appellant addressed the court and the following took place:

"Your Honor, at this time, as attorneys for the defendant, we would like to change our plea of not guilty to a plea of guilty with recommendation to mercy.

"The Court: What do you say to that, Solicitor?

"Mr. Nolen: Your Honor, the State of South Carolina cannot consent to the offer of such a plea. As I understand, it is an offer of a plea of guilty with recommendation to mercy?

"The Court: Yes, sir.

"Mr. Nolen: No, sir, Your Honor."

Thereafter, the trial proceeded, without any objection on the part of the appellant. He was convicted of rape and sentenced to death. Sections 16-71, 16-72, of the 1952 Code of Laws of South Carolina. It appears from the evidence that the prosecutrix, a white woman, fifty-six years of age, a resident of Cowpens, Spartanburg County, South Carolina, was assaulted and raped in her home at about 5:00 o'clock on the morning of April 3, 1960. She was unable to identify the person who attacked and raped her, other than that he was a Negro man. The appellant, who lived approximately two hundred yards from the home of the prosecutrix, was arrested at about 2:00 o'clock P. M., on April 3, 1960. He was taken to the Spartanburg County jail and questioned by five officers, three of said officers being in plain clothes with their weapons concealed, and two being in uniform with their weapons showing. Upon being questioned by the officers, after being advised of his rights, the appellant confessed that he had assaulted and raped the prosecutrix. The confession made by the appellant was recorded on an electric recording device. The following morning, the Sheriff of Spartanburg County, in the presence of police officers, questioned the appellant and he again confessed to having attacked and raped the prosecutrix. This confession was also recorded on an electric recording device. Upon the trial of the case, the two confessions of the appellant were admitted in evidence upon the showing that the same were freely and voluntarily made by him. The electric tape recordings of

the confessions were not offered in evidence, the State relying upon the oral testimony of the officers present when the alleged confessions were made.

It appears from the record that all of the evidence in this case was made available to the attorneys for the appellant, including the tapes on which the confessions were electronically recorded. Counsel heard these tapes played and knew the contents thereof. At no time during the trial of the case did the appellant demand that the State produce the recordings nor was there objection made to the officers testifying as to the confessions of the appellant on the ground that the tape recordings were the best evidence and the oral testimony of the confessions inadmissible. The sole objection to the admission of the oral testimony of the confessions of the appellant was on the ground that he was not fully advised of his rights, that he was not represented by counsel, that there were five law enforcement officers of the County in the room with him at the time of his confessions, and that the confessions, under such circumstances, cannot be considered free and voluntary, and that he was intoxicated at the time the confessions were made. This objection to the admission of the confessions was overruled.

The appellant offered no testimony. At the close of the testimony in behalf of the State, the appellant moved for a directed verdict on the grounds: (1) That the State had failed to prove penetration; (2) That the confessions be stricken from the evidence on the ground that the electric tape recordings were the best evidence of such confessions, and the secondary oral testimony of the confessions should not have been admitted in evidence; and (3) That the appellant was coerced into making the confessions, and hence, they were not free and voluntary. The motion for a directed verdict was refused.

After conviction of the appellant, a motion for a new trial was made on the following grounds: (1) That it was error for the Court to refuse to quash the venire on the ground

that Negroes had been systematically excluded from the jury panel; (2) That the confessions of the appellant were involuntary; (3) Assuming that the confessions were voluntary, then the taped recordings of such were the best evidence and it was error to permit oral testimony as to the confessions; (4) That there is a complete lack of proof of penetration necessary to make out the crime of rape; (5) That since the appellant, in the presence of the jury, offered to change his plea of "Not Guilty" to a plea of "Guilty with a Recommendation to Mercy", the State having refused to accept such, it was prejudicial error to thereafter try him before a jury who had heard the offer to make such a plea; and (6) That the refusal of the Trial Judge to charge the jury, as requested by the appellant, that the jury had the sole discretion as to whether a verdict should be rendered with mercy or without a recommendation to mercy. The motion for a new trial was denied and the appellant was sentenced to suffer death by electrocution as provided by law. Notice of appeal to this Court was duly given and the appellant asserts that he is entitled to a new trial because of the foregoing errors committed in the trial of his case.

The first question for determination is whether there was error on the part of the Trial Judge in refusing to quash the venire, on the ground that Negroes are systematically excluded from the jury panel because of their race or color. In the case of State v. Waitus, 224 S. C. 12, 77 S. E. (2d) 256, this Court reviewed the constitutional and statutory law of this State relating to the qualifications of jurors and the method of selecting them. It was there held that where a Negro objects to either a grand or petit jury because of alleged discrimination against his race, he has the burden of proving that qualified Negroes were intentionally or systematically excluded because of their race or color, and if there has been an unconstitutional discrimination, the motion to quash should be granted. The evidence in the instant case is conclusive that there has not been any exclusion of any person from the jury panel because of race, creed,

color or nationality. The evidence shows that a Negro man was a member of the grand jury that indicted the appellant. The evidence further conclusively shows that many Negroes have served as jurors in the civil and criminal courts of Spartanburg County. We think the Trial Judge properly refused the motion of the appellant to quash the venire. In addition to what we have said, we point out that this question was not argued in the brief of the appellant and we, therefore, consider it abandoned. *State v. Collins,* 235 S. C. 65, 110 S. E. (2d) 270. Upon the oral argument of this case, counsel for the appellant also stated that they had abandoned this exception and did not now contend that there was any merit in such exception.

The next question for our determination is whether it was error to admit into evidence the alleged confessions of the appellant when such were taken while he was in custody, it being asserted that he was not fully advised of his rights, and because of such he alleges that the confessions were not free and voluntary.

The question of whether a confession is voluntary is one which is addressed to the court in the first instance. If there is an issue of fact as to the voluntariness of a confession, it should be admitted and the jury under proper instructions allowed to make the ultimate determination as to its voluntary character and also its truthfulness. A confession is not admissible unless it is voluntary. It necessarily follows that the burden rests upon the State to show that it was voluntary and there is no presumption of law that it was. The mere fact that a confession is made while the accused is in custody does not render it inadmissible. However, the conduct of the officer obtaining the confession will be rigidly scrutinized, and the fact that it is made while the accused is under arrest is a circumstance along with the other facts and circumstances to be taken into consideration by the jury in determining its voluntariness. *State v. Bullock,* 235 S. C. 356, 111 S. E. (2d) 657; 365

U. S. 292, 81 S. Ct. 686, 5 L. Ed. (2d) 570, and *State v. Outen,* 237 S. C. 514, 118 S. E. (2d) 175.

When the State offered evidence of the alleged confession of the appellant, a prompt objection was made to such admission on the ground that the appellant was not fully advised of his rights, that he was not represented by nor afforded the opportunity to have counsel, and that the confession, in the presence of five law enforcement officers, could not be free and voluntary, and that the appellant was intoxicated at the time of the confession. The Trial Judge then excused the jury, and, in the absence thereof, heard the testimony of the officer concerning the circumstances of the confession. The witness, who was the Captain of the Rural Detective Division of Spartanburg County, testified that the confession of the appellant was freely and voluntarily given and that he was not intimidated, abused or threatened in any manner. This officer testified that the appellant was fully advised of his rights and that he said he knew what his rights were. This same witness testified that the appellant was not under the influence of an intoxicant when he made his confession. No evidence was offered in behalf of the appellant to the contrary. The procedure outlined in the case of *State v. Sanders,* 227 S. C. 287, 87 S. E. (2d) 826, had been followed, except the appellant had not availed himself, nor was he required to do so, of the opportunity through his own testimony, or that of other witnesses, to contradict the *prima facie* showing made by the State as to the voluntariness of his confession. The Trial Judge admitted as evidence the alleged confession of the appellant after this witness had been fully cross examined by counsel for the appellant as to the voluntariness of the confession.

The Sheriff of Spartanburg County testified that he interviewed the appellant on the day following the above alleged confession. The Sheriff testified as follows:

"* * * I advised him that he did not have to make any statement if he didn't care to. I asked him to tell me the truth if he cared to make any statement. I assured him that

he would not be mistreated in any way. I made no promises whatsoever to reward him for making any statements, and with that understanding, if he cared to answer certain questions concerning it.

"Q. Were any threats of punishment or coercion made by you or either of the other officers in the room, to him?

"A. None whatsoever.

"Q. Would you say that his statement to you was free and voluntary?

"A. Yes, sir."

Captain Fowler had previously testified as to the voluntariness of the confession made by the appellant. We quote the following from his testimony:

"Q. What, if anything, did you say to him, Captain?

"A. I advised him I wished to talk to him about a matter that had happened over in the Cowpens area. I advised him of his right to make a statement, that he didn't have to make a statement, that any statement he made could be used for him or against him in a Court later on.

"Q. Did you hold out any hope of reward or anything of that nature, to get him to tell you what he told you?

"A. No, sir.

"Q. Were any threats of punishment made to him?

"A. No, sir.

"Q. Was any coercion whatever exerted by you or any other officers present to try to get him to make a statement?

"A. No, sir.

"Q. Would you say his statement to you was free and voluntary?

"A. Yes, sir."

All of the evidence tends to show that the confessions made by the appellant, who was very intelligent and had completed the tenth grade in high school, were freely and voluntarily given. The jury, under appropriate instructions by the Trial Judge, was allowed to make the ultimate determination as to whether the confessions of the appellant were freely and voluntarily made.

We find no error on the part of the Trial Judge in admitting into evidence the confesssions of the appellant.

The next question raised by the appellant is whether oral testimony of the confessions can be given where the evidence shows that tape recordings were made of such confessions.

As is heretofore stated, the two confessions of the ■ appellant were electronically recorded but such recordings were not offered in evidence by the State. The appellant did not object to the oral testimony of the officers as to the confesssions made by the appellant on the ground that the tape recordings were the best evidence and oral testimony was inadmissible as secondary evidence. Ordinarily, we could dispose of this exception under the rule that where testimony is received under objection, an appellant in this court must rely upon the specific grounds of objection assigned on the trial. *State v. Owens,* 124 S. C. 220, 117 S. E. 536, and *State v. Thompson,* 76 S. C. 116, 56 S. E. 789. However, since this is a case where the death sentence has been imposed, it becomes necessary for us to consider, *in favorem vitae,* this exception.

It has almost uniformly been held that evidence offered in the form of a sound recording is not inadmissible because of that form if properly authenticated. *State v. Steadman,* 216 S. C. 579, 59 S. E. (2d) 168.

The fact that a conversation or statement has been simultaneously overheard by witnesses and sound recorded has in some cases been used, unsuccessfully however, as an argument for the exclusion of testimony by the witnesses from memory as to what they heard, on the ground that the recording has preserved the best evidence. *People v. Kulwin,* 102 Cal. App. (2d) 104, 226 P. (2d) 672; *People v. Sica,* 112 Cal. App. (2d) 574, 247 P. (2d) 72; *United States v. White,* 2 Cir., 223 F. (2d) 674; *Thompson v. State,* Okl. Cr., 298 P. (2d) 464. Conversely, it has been held that recordings of conversations or statements will not be excluded

on the ground that testimony of witnesses who simultaneously overheard them constitute the best evidence. *Monroe v. United States,* 98 U. S. App. D. C. 228, 234 F. (2d) 49.

In *People v. Kulwin, supra,* a bookmaking prosecution in which the testimony of a police officer as to conversations of defendants overheard by him was objected to as not being the best evidence since the conversations had been recorded, the court held that the best evidence rule did not apply because when a person testifies to what he has seen or heard such testimony is primary evidence, regardless of whether the same facts are reduced to writing or incorporated in a sound recording, and that even though the recordings might be more reliable and satisfactory evidence than testimony from memory, the latter is not rendered incompetent by the existence of the former.

In *Thompson v. State, supra,* a prosecution for armed robbery, where the testimony of a police officer as to defendant's conversation with prisoner in an adjoining cell was objected to because a tape recording had been made of the conversation and was claimed to be the best evidence, the court held that the police officer could give oral testimony as to what transpired between the two prisoners, adding: "For surely even the tape recording could not be regarded as any more efficacious than the testimony of the officer from memory as to what he actually heard."

Where proof of a conversation has been of two different kinds, namely, a recording thereof and testimony by witnesses who overheard it, it has been argued that both the recording and the testimony were the best evidence. However, the courts have not relegated either to a secondary position but have held that both types of evidence are equally competent primary evidence. 58 A. L. R. (2d) 1044, 1045.

In *People v. Sweeney,* 55 Cal. (2d) 27, 9 Cal. Rptr. 793, 357 P. (2d) 1049, it was held that a witness could properly testify to conversation notwithstanding fact that it had been recorded and recording was not produced. In *State v.*

*Mellerine,* 236 La. 881, 109 So. (2d) 454, it was held that the testimony of a witness as to conversations was not inadmissible because conversations had been recorded.

We conclude that there was no error on the part of the Trial Judge when he refused to hold that the tape recordings of the confessions of the appellant were the best evidence. It was competent to prove the confessions by the oral testimony of the officers who heard such, even though a recording thereof was made. In this connection, we should point out that the tape recordings of the confessions of the appellant had been made available to his counsel. There is no showing that the contents of the recordings were any different from the oral testimony of the officers who heard the confessions. If there was a difference, the recordings could have been used for the purpose of impeaching these witnesses.

The appellant asserts that the Trial Judge committed error in refusing to direct a verdict of "Not Guilty" because the State failed to prove penetration beyond a reasonable doubt, this being a necessary element of the crime of rape.

In order to constitute the crime of rape there must be some degree of penetration of the female genital organ by the male genital organ, but any penetration, however slight, is all that is necessary. It is not necessary for the State to prove emission. 75 C. J. S., Rape, § 10, page 473; 44 Am. Jur., Rape, Sec. 3, page 902; *State v. LeBanc,* 3 Brev. 339, and *State v. Wyatt,* 221 S. C. 407, 70 S. E. (2d) 635.

The prosecuting witness, a fifty-six-year-old woman and the mother of a fifteen-year-old daughter, testified that a Negro man jumped in the bed in which she was lying, put his hands over her mouth, and said: "I just want to be with a white woman and that is what I am going to do." She testified that when her assailant jumped on the bed that the springs, mattress and slats all fell to the floor and that he then "drug me on through the kitchen to that back bedroom

there." She further testified that when her assailant got her to the back bedroom that he "throwed me on the bed then and raped me", and she further said, "After he got me back there he done what he wanted to." Upon being asked if her assailant had sexual relations with her, she replied, "Yes, sir", and she was further asked, "For how long a period of time, do you know?", and she answered, "Well, I don't know. It seemed like a long time." It further appears that after the appellant left the prosecuting witness, she ran to the occupants of an adjoining apartment, and, "I told them a Negro had come in on me and raped me." The testimony also shows that the appellant in his confession admitted that he had sexual relations with the prosecuting witness. The sheriff was asked if the appellant admitted that he had sexual relations with the prosecuting witness, and his answer was, "Yes, sir."

The appellant relies upon the testimony of a physician who examined the prosecuting witness following the alleged attack, such witness testifying that he could not swear that the prosecuting witness had had sexual intercourse because he found no male spermatozoa. However, this witness did testify that there was active bleeding from the genital region and the mouth of the womb was abraded.

We quote from *State v. Wyatt, supra,* the following:

"We think that the evidence along this line was ample. The victim said that he had sexual intercourse with her. The appellant contends that this was not sufficient, and that more details should have been given. Here, however, we have a married woman, and without doubt she fully understood the meaning of these words. She also testified that the defendant had accomplished his purpose. * * *"

We think that the testimony in this case, to which reference is above made, was sufficient to require the Trial Judge to refuse the motion of the appellant on the ground stated. The evidence required the submission of this issue to the jury.

It appears from the record that immediately following the swearing of the jury that the appellant, through his counsel, attempted to change his plea of not guilty to a plea of guilty with recommendation to mercy. To this offer, the Solicitor stated that "The State of South Carolina cannot consent to the offer of such a plea." The appellant charges that it was error, after the foregoing had taken place in the presence of the jury, for the Trial Judge to deny his motion for a new trial, because it constituted prejudicial error to thereafter subject the appellant to trial before the jury who had heard the offer of a plea of guilty. It is also charged that it was prejudicial error for the Solicitor to make the statement that the State of South Carolina could not consent to the offer of such a plea.

Counsel for the appellant, with commendable candor, admitted in oral argument that the tender of a plea of guilty with a recommendation to mercy was done after mature deliberation and with the consent of the appellant. There was no agreement between the Solicitor and counsel for the appellant about the submission of any kind of a plea. It was the action of the appellant that brought about the situation about which he now complains. It is conclusive from the record that the Solicitor, as a representative of the State of South Carolina, did nothing to induce the appellant to tender the aforesaid plea.

In the case of *State v. Vaughn,* 95 S. C. 455, 79 S. E. 312, 238 U. S. 612, 35 S. Ct. 940, 59 L. Ed. 1489, it appears that the appellant was tried for the crime of rape. He pleaded not guilty but after the trial had begun he changed his plea, through his attorney, and with the consent of the Solicitor, to guilty, and agreed that the only issue to submit to the jury was whether or not he was entitled to a recommendation to mercy. The jury failed to recommend mercy and the defendant appealed on the ground that the Trial Judge failed to advise him of the nature and consequence of his plea. The appellant asserts that he followed the procedure outlined in the *Vaughn case* in tendering his plea.

We do not agree with this contention. In the *Vaughn case* a plea of guilty was made with the consent of the defendant and the State, with the understanding that the sole question to be submitted to the jury was whether the defendant there was entitled to a recommendation to the mercy of the court. Here, the appellant tendered a "plea of guilty with recommendation to mercy." If the State had accepted such a plea, there would have been no question for the jury to determine. We point out further that there was no agreement by appellant's counsel with the Solicitor in this case, as there was in the *Vaughn case*. If the Solicitor in this case had consented to the plea as tendered by the appellant, all that could have been done was for the Circuit Judge to sentence the appellant to a term not exceeding forty years nor less than five years, as is provided in Section 16-72 of the Code.

The appellant is not in position to complain of any prejudice resulting to him by reason of his tender of the aforesaid plea. He cannot complain of an error which his own conduct has induced. *State v. Epes*, 209 S. C. 246, 39 S. E. (2d) 769; *Brown v. State*, 150 Ga. 756, 105 S. E. 289, and *Brown v. State*, 71 Ga. App. 522, 31 S. E. (2d) 85. In *State v. Britt et al.*, 237 S. C. 293, 117 S. E. (2d) 379, we held that where an appellant expressly consented to the admission of certain evidence, he was not in position to complain of its introduction.

We have also held that an appellant may not reserve vices in his trial, of which he has notice as here, taking his chances of a favorable verdict, and in case of disappointment, use the error to obtain another trial. *State v. Robinson*, 238 S. C. 140, 119 S. E. (2d) 671, and the cases therein cited. We conclude that the appellant is not in position to assert error when he was the author of such and his own conduct induced the situation of which he now complains. This exception is overruled.

The Trial Judge, in the language of Section 16-72, of the 1952 Code of Laws of South Carolina, instructed the jury as follows:

"Any person convicted of rape or assault with intent to ravish shall suffer death unless the jury shall recommend him to the mercy of the court in which event he shall be confined at hard labor in the State Penitentiary for a term not exceeding forty years nor less than five years, at the discretion of the presiding judge."

Thereafter, when the Trial Judge was giving to the jury the possible verdicts that it could return, with reference to Count One of the indictment, which charged the crime of rape, he gave the following instructions: "Guilty on Count One, with recommendation to the mercy of the Court. In that event, the punishment would be reduced from death by electrocution to punishment at hard labor in the penitentiary of this State for not less than five, nor more than forty years." Likewise, when he charged the jury that it was within their province to return a verdict of guilty on Count Two, which charged an assault with intent to ravish, he told the jury that they could return a verdict of guilty, which would mean death by electrocution, or that they could return a verdict of guilty with recommendation to the mercy of the court, which would automatically reduce the punishment from death by electrocution to imprisonment at hard labor for a period of not less than five nor more than forty years, in the discretion of the Trial Judge.

At the conclusion of his charge to the jury, the Trial Judge, following the requirement of Section 10-1210 of the 1955 Code Supplement, excused the jury and asked counsel if they had any objections to the charge as made or if any further instruction to the jury was desired. One of the counsel for the appellant stated:

"* * * I would like for you to point out to them, that they can, if they bring back a guilty verdict, that they can bring back guilty with recommendation to the mercy of the Court, without any reason at all, they don't have to have anything to go on, it is in their province to do that, and that no one can criticize them for it. * * *"

The Trial Judge declined to charge the jury the requested instruction and the appellant charges that such refusal was error.

Certainly, under Section 16-72 of the Code, where a defendant is found guilty of rape, it is for the jury to determine whether mercy shall be extended and, thereby, reduce the sentence from death to imprisonment.

In *State v. Bethune,* 86 S. C. 143, 67 S. E. 466, we find the following:

"The court charged the jury: 'When shall the jury recommend a party to mercy? The Legislature gave the right, and the Legislature did not limit the power. They said wherever the jury sees proper under all the circumstances of the case, if they see any mercy in the circumstances—if the circumstances of the case satisfy the jury that the elements in the case reduce it from that bold and awful murder which merits death—then the jury may recommend the party to mercy.'

"It is contended that this placed a limitation on the power of the jury to recommend to mercy when the Legislature placed none, and that further it was a charge on the facts by calling the case murder.

"It would have been better if the court had simply called the jury's attention to the terms of the statute, and left the matter with them without further remark. * * *"

In the case of *State v. King,* 158 S. C. 251, 155 S. E. 409, this Court had under consideration the charge of the Trial Judge with reference to recommending mercy in a case where the defendant was charged with murder. We quote therefrom the following:

"* * * The proper charge to be given as to this statute is for the presiding judge to simply inform the jury that under its provisions they may recommend the defendant to the mercy of the court, and that the effect of such recommendation will be to save the accused from death, and cause him to be sentenced for lifetime imprisonment at hard labor. * * *"

In the case of *State v. Jones,* 201 S. C. 403, 23 S. E. (2d) 387, there was again under consideration the charge of the Trial Judge with reference to recommending mercy in a case where the defendant was charged with murder. In preparing the opinion in the *Jones case,* Acting Associate Justice L. D. Lide quoted and italicized the above quotation from *State v. King, supra,* and with reference to such, it was said:

"The portion of the foregoing excerpt which we have italicized, is, we believe, a clear, succinct and correct statement of the rule prescribed by this Court and to be followed by trial Judges in murder cases; * * *."

The doctrine laid down in *State v. King, supra,* was expressly reaffirmed in *State v. Blakely,* 158 S. C. 304, 155 S. E. 408; *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880; and *State v. Daniels,* 231 S. C. 176, 97 S. E. (2d) 902.

We quote from *State v. Jones, supra,* the following:

"Upon an examination of cases from other States, we find that the matter under discussion has resulted in some division among the authorities, due in part to statutory differences, and the cases are cited in annotations in 17 A. L. R. 1117 and 87 A. L. R. 1362. In the latter annotation, at page 1366, we find the following correct analysis of the holding of our own Court in the *King* and *Blakely cases, supra*: 'The view that, where the statute makes a recommendation binding on the Court, the question whether the defendant shall be recommended to the clemency of the Court is entirely within the discretion of the jury, and that any instruction, charge, or suggestion as to the cause for which the jury can or ought to recommend mercy is erroneous, and is ground for a reversal of a conviction where no recommendation is made, finds support in' these two South Carolina cases."

In 17 A. L. R., at page 1125, it is said: "Where the jury are instructed as to their power to recommend the defendant to mercy, it is sufficient if the charge is in the language of the statute." In support of this rule, there is cited, *Newton*

*v. State,* 21 Fla. 53; *Mann v. State,* 22 Fla. 600; *Denham v. State,* 22 Fla. 664; *Cook v. State,* 46 Fla. 36, 35 So. 665; and *Fogarty v. State,* 80 Ga. 450, 5 S. E. 782. In this connection see also the following cases: *Caison v. State,* 171 Ga. 1, 154 S. E. 337; *Cofer v. State,* 163 Ga. 878, 137 S. E. 378; *Black v. State,* 187 Ga. 136, 199 S. E. 810; *Hopkins v. State,* 190 Ga. 180, 8 S. E. (2d) 633; and *Morrow v. State,* 168 Ga. 575, 148 S. E. 500. Attention is also directed to the annotations contained in 17 A. L. R., at page 1125, 87 A. L. R., at page 1364, and 138 A. L. R., at page 1235, which deals with questions that have arisen with reference to a recommendation of mercy by the jury in a criminal case.

In 26 Am. Jur., Homicide, Sec. 551, at page 541, it is said:

"An instruction upon the power of the jury to recommend the defendant to mercy, when given in the language of the statute, is sufficient. In some cases it is said that the function of instructing the jury in this regard is best performed by giving the terms of the statute to the jury. By statute in some jurisdictions the court may read the statute of its own accord."

I do not think that the Trial Judge committed error in his charge to the jury when such charge was in the language of the statute. His charge was in accord with the rule prescribed by this Court in the cases heretofore cited.

I would affirm the judgment of the lower court.

Lewis, J., concurs.

Legge, Justice (concurring in part and dissenting in part).

Otherwise in full accord with the leading opinion, ▪ by Moss, J., I cannot escape the conclusion that the Trial Judge erred in refusing to instruct the jury, as requested by defendant's counsel, with regard to their unrestricted power to recommend mercy, and that because of such error a new trial should be ordered.

Review of the legislative enactments hereinafter referred to, and of the decisions of this court interpreting them discloses substantial change, over a long period of years, in public policy with respect to enforcement of the death penalty in cases of murder, rape, arson, and burglary.

As pointed out in *State v. Green,* 220 S. C. 315, 67 S. E. (2d) 509, recommendation to mercy by the jury has always been sanctioned in this state; but in the absence of statute such recommendation is merely advisory, constituting no part of the verdict and imposing no obligation upon the Trial Judge to heed it. Thus impotent was such a recommendation in *State v. Gill* (1880), 14 S. C. 410, and also in *State v. Bennett* (1893), 40 S. C. 308, 18 S. E. 886. The last mentioned case no doubt influenced passage by the legislature, in 1894, of the Act (21 Stat. at L. 785), now part of Section 16-52 of the 1952 Code, which declared that if, upon conviction of murder, the jury by special verdict recommend the defendant to the mercy of the court, the punishment "shall be reduced to imprisonment in the penitentiary with hard labor during the whole lifetime of the prisoner."

By the old English statute of 13 Edward I, chapter 34, enacted in the year 1285, the crime of rape was punishable by death. That statute having been declared by Act of the Assembly of the Province of South Carolina ratified December 12, 1712, to be of force in said province, rape presumably remained a capital offense in this state until the Act of February 4, 1869, 14 Stat. at L. 175, which abolished capital punishment except in case of "willful murder" and made the crimes of rape and arson punishable "by hard labor in the Penitentiary for life, or for a period not less than ten years, according to the aggravation of these offenses." Cf. *State v. Whitener,* 228 S. C. 244, 89 S. E. (2d) 701.

In 1878, 16 Stat. at L. 631, rape and arson were again made capital offenses, with the provision that if the jury by special verdict recommend the prisoner to the mercy of

the court the punishment "shall be reduced to imprisonment in the Penitentiary with hard labor during the whole lifetime of the prisoner." That Act also declared burglary punishable by life imprisonment at hard labor, with no provision for reduction of sentence in the event that the jury should recommend mercy.

The later Act of December 19, 1883, 18 Stat. at L. 290, provided that if, upon conviction of arson, the jury recommend mercy, the punishment "shall be reduced to imprisonment in the Penitentiary, with hard labor, for a term of not less than ten years." It also provided that if, upon conviction of burglary, the jury recommend mercy, the punishment "shall be reduced to imprisonment in the penitentiary at hard labor for a term of not less than five years." Code 1952, Section 16-331.

The Act of March 3, 1928, 35 Stat. at L. 1226, changed the punishment for arson to imprisonment in the Penitentiary for not less than two nor more than twenty years. It made no provision for reduction of sentence in the event that the jury should recommend mercy. Code 1952, Section 16-311.

Since the Act of March 3, 1909, 26 Stat. at L. 206, the effect of the jury's recommendation to mercy upon conviction of rape, or of assault with intent to ravish (which was for the first time made a capital crime), has been to reduce the punishment from death to confinement at hard labor in the Penitentiary for not more than forty nor less than five years, at the discretion of the presiding judge. Code 1952, Section 16-72.

It will be observed from the legislation before mentioned that of the crimes of murder, rape, arson and burglary, all of which were punishable at common law by death, only murder and rape and, (since the 1909 Act, assault with intent to ravish) now remain capital offenses in this state. The maximum penalty for burglary is now life imprisonment; the punishment for arson is now left to the discretion of the

Trial Judge within the wide limits of two and twenty years. No less significant than the reduction of the number of capital offenses is the delegation by the legislature to the jury, in cases of murder, rape, assault with intent to ravish, and burglary, of certain power of clemency—a prerogative historically reserved for the executive branch of government.

Illustrative of the force now accorded to the jury's recommendation to mercy, even where the result of such recommendation is not specifically defined in the statute, is *State v. Kimbrough,* 212 S. C. 348, 46 S. E. (2d) 273. In that case the jury found the defendant guilty of burglary and recommended him to the mercy of the court. As before noted, the statute, now Section 16-331, provided that upon such recommendation the punishment should be reduced from life imprisonment to imprisonment for a term of "not less than five years." The defendant, sentenced to imprisonment for thirty years, appealed upon the ground that such sentence was manifestly excessive. A majority of this court, guided by the rule that it had no jurisdiction to set aside, upon the ground of excessiveness, a sentence within the discretionary limits prescribed by law, at first affirmed; but upon rehearing it was unanimously agreed that the sentence imposed was manifestly excessive, there being nothing in the record to justify the trial court's disregard of the jury's recommendation, and the case was accordingly remanded for resentencing. To quote briefly from the opinion:

"* * * Under this statute, the recommendation of the jury is an important part of the verdict. The jury is required to not only determine the guilt of the accused but under this statute is permitted to some extent to pass upon the turpitude of the crime. To have a jury bring in a verdict recommending mercy on the strength of a charge that it may do so and thereby reduce the punishment from life to a term of years and then have the judge to disregard that verdict, would certainly appear illogical. It would tend to shake and weaken the confidence of the juries in the courts."

In *State v. Bethune* (1910), 86 S. C. 143, 67 S. E. 466, the trial judge charged the jury in substance that, although the statute did not limit its power to recommend mercy, the exercise of that power must be based upon the "circumstances of the case"—in other words, upon the jury's view of the evidence. On appeal it was contended that this charge was erroneous in that it placed a limitation, not intended by the legislature, upon the power of the jury to recommend mercy. But this court held that there was no error. Declaring that "it would have been better if the court had simply called the jury's attention to the terms of the statute, and left the matter with them without further remark", it went on to say: "Still we do not think that the Legislature meant that the power to recommend to mercy should be exercised arbitrarily or capriciously, or without regard to some circumstances in the case."

In *State v. Bates* (1911), 87 S. C. 431, 69 S. E. 1075, this court held that there was no error in a charge that the jury "must take all these facts and circumstances together and see if, in your judgment as jurors, this is a case for recommendation to mercy."

In *State v. King* (1929), 158 S. C. 251, 155 S. E. 409, this court, in the course of its discussion of the jury's power under the statute to recommend mercy upon conviction of murder, said: "It is clear that under its terms a jury may, for any reason * * * appearing to them, refuse to have the accused put to death, but may spare his life. The proper charge to be given as to this statute is for the presiding judge to simply inform the jury that under its provisions they may recommend the defendant to the mercy of the court, and that the effect of such recommendation will be to save the accused from death, and cause him to be sentenced for lifetime imprisonment at hard labor." I do not regard as conclusive of the issue now before us the sentence last quoted above. The question in the *King case* (which this court resolved in the affirmative) was whether the trial judge had committed error in repeatedly stating to the jury that they

had nothing to do with mercy and in further telling them some of the instances in which they should recommend mercy.

In *State v. Blakely* (1929), 158 S. C. 304, 155 S. E. 408, conviction of murder, without recommendation, was reversed upon the single ground that the trial judge had erred in stating to the jury that they had "mighty little to do with mercy" and in further stating to them circumstances that would justify their recommending mercy. *State v. King, supra,* was referred to as having decided "the identical questions".

The view expressed in *State v. Bethune, supra,* and *State v. Bates, supra,* that the jury must found its recommendation to mercy upon the facts and circumstances of the case, was repudiated in *State v. Jones* (1942), 201 S. C. 403, 23 S. E. (2d) 387, where Acting Associate Justice Lide, speaking for the court, said:

"We need not stop to consider whether these cases might be distinguished from the case at bar, but in order that there may be no misunderstanding we desire to say that in so far as the *Bethune* and *Bates cases* may be construed to limit or qualify the rule later laid down as above quoted they were in effect superseded and overruled by the decisions of this Court in the cases of *State v. King, supra,* and *State v. Blakely, supra.* We believe it was manifestly the wise intent of the statute that the full responsibility for recommendation to mercy in murder cases and thus reducing the sentence from death to life imprisonment was placed upon the jury rather than upon the presiding Judge, and their discretion in the matter is an unlimited one."

It is true that in the *Jones case* Acting Associate Justice Lide declared that the statement in the *King case* (to the effect that the proper charge on the statute is for the presiding judge simply to inform the jury that under its provisions they may recommend mercy and that such recommendation would effect reduction of the sentence to life imprisonment)

was "a clear, succinct and correct statement of the rule pre- scribed by this Court and to be followed by trial Judges in murder cases". But in Jones, as in King, the issue before the court was not that with which we are presently concerned. In Jones, it was whether the trial judge had erred in charging the jury, in effect, that if the evidence should not be sufficient to warrant them in extending mercy, their recommendation to mercy would amount to a violation of their oath as jurors.

So also in *State v. Chasteen* (1955), 228 S. C. 88, 88 S. E. (2d) 880, the issue now before us was not involved, this court approving the trial judge's refusal to charge, at the request of defendant's counsel, that if the jury should conclude that he was guilty of murder, but should have a reasonable doubt as to whether or not they should recommend mercy, they would be required, under the law, to resolve such doubt in his favor and recommend him to the mercy of the court. We there reiterated the rule that "a recommendation to mercy rests entirely in the discretion of the jury and may be exercised independently of whether the evidence warrants it."

Nor was the present issue involved in *State v. Daniels* (1957), 231 S. C. 176, 97 S. E. (2d) 902, a rape case, in which we approved a charge that "in any capital case * * * the Jury * * * may, for any reason in the world or for no reason in the world, except that it wants to do so, attach a recommendation to the mercy of the Court to its verdict and thereby avoid the death penalty."

That reluctance to inflict the death penalty except in extreme cases has replaced the inflexible rules of the common law in this state is apparent from the legislative enactments, and their judicial interpretation, before mentioned. This court, too, has over many years evidenced a like policy apart from construction of statutes, under the now invariable rule that in death cases it will not confine its inquiry to issues raised before the trial court, but will itself search the record

for any error affecting the substantial rights of the appellant although not made a ground of appeal.

The question squarely facing us for the first time is whether, in a rape case, the bare reading of Section 16-72 of the Code sufficiently and properly instructs the jury as to their power under it to recommend mercy. In my opinion that question should be answered in the negative, for the following reasons:

1. The provisions in the 1909 Act, now included in Section 16-72, giving to the jury power to recommend mercy upon conviction of rape and thereby to avoid the death penalty, substantially changed the punishment for that crime. It is therefore of vital importance to the accused that the jury be charged as to its power under that statute, for it is a part of the law peculiarly applicable in a death case. The accused has no right whatever to such recommendation; he has a substantial right, under Article V, Section 26 of the Constitution of 1895, to have the jury instructed as to the meaning of that statute.

2. The meaning of this statutory provision cannot be fairly and adequately imparted by merely reading it. Essential to its understanding is its interpretation by this court, not reached until after the *Bethune* and *Bates cases,* but now firmly settled and an integral part of the statute, *viz:* that the jury's power to recommend mercy is not dependent upon its view of the facts and circumstances revealed by the evidence, but is absolute, unlimited, and not subject to review.

3. Every conclusion by a jury, other than that with respect to recommendation to mercy, is required by law and by the juror's oath to be based upon the evidence or lack of it. In the absence of instruction as to that distinction, I am convinced of the likelihood that the average juror would think that his power to recommend mercy is limited to considerations arising from the evidence. The distinction is a vital one, and in my opinion, the trial judge's refusal to point it out deprived the defendant of a substantial right under Article V, Section 26.

Whether or not in a capital case error in failing to charge that the jury's power to recommend mercy is absolute may be waived by counsel's failure to request such instruction is not in issue here; in the instant case the request was made. But I suggest that the *dictum* in the majority opinion in *State v. Adams,* 68 S. C. 421, 47 S. E. 676, to the effect that the right to a charge on the statute may be so waived in a capital case is not consonant with the now settled rule *in favorem vitae,* and that its approval in *State v. Jamison,* 221 S. C. 312, 70 S. E. (2d) 342, is not important here because in Jamison the jury did recommend mercy and the death penalty was therefore not involved in the appeal.

A majority of the court concurring in the result of the foregoing opinion, the judgment below is reversed and the case is remanded for a new trial.

Reversed and remanded.

OXNER, J., concurs in result.

OXNER, Justice (concurring in part and dissenting in part).

For the reasons so cogently stated by LEGGE, J., I think the Court erred in not charging the substance of the request made by appellant's counsel as to the power of the jury to recommend mercy. Whether it would constitute reversible error to fail to charge along this line where no request therefor was made is not now presented and I prefer to express no opinion thereabout. Accordingly, I concur in the result of the opinion of LEGGE, J., and dissent in part from the opinion of Moss, J.

TAYLOR, C. J., concurs.